KANSAS CITY SOUTHERN RY. CO. v. MARTIN.

(Circuit Court of Appeals, Fifth Circuit.    January 6, 1920.)

No. 3450.

1. COMMERCE ⊜27(8)—RAILWAY EMPLOYÉ UNLOADING BRIDGE TIMBERS EMPLOYED IN "INTERSTATE COMMERCE."

A railroad employé, engaged, when injured, in work on the ground unloading timbers to be used by him and others in the reconstruction or repair of a bridge, constituting part of a railroad in use as an instrumentality of interstate commerce, *held* employed in "interstate commerce" within Employers' Liability Acts of April 22, 1908, and April 5, 1910 (Comp. St. §§ 1010, 8657–8665).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. RELEASE ⊜58(3)—VALIDITY QUESTION FOR JURY.

In an action by a servant for personal injury, where defendant pleaded a release in bar, the issue made by a reply, alleging that plaintiff was induced to execute the release by fraudulent representations of defendant's agent, and that on learning their falsity he returned the check received, *held* properly submitted to the jury with the other issues.

3. MASTER AND SERVANT ⊜216(5)—RISK OF INJURY FROM NEGLIGENCE OF CO-EMPLOYÉ OF INTERSTATE CARRIER NOT ASSUMED.

An interstate carrier's employé, injured by ties falling from a flat car, caused by the negligence of a coemployé, *held* not to have assumed the risk.

In Error to the District Court of the United States for the Eastern District of Texas; George W. Jack, Judge.

Action at law by M. Martin against the Kansas City Southern Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

John J. King and W. L. Estes, both of Texarkana, Tex., for plaintiff in error.

J. Q. Mahaffey, of Texarkana, Tex., and S. P. Jones, of Marshall, Tex. (Mahaffey, Keeney & Dalby, of Texarkana, Tex., on the brief), for defendant in error.

Before WALKER, Circuit Judge, and FOSTER and GRUBB, District Judges.

WALKER, Circuit Judge. The defendant in error (who will be referred to as the plaintiff), a citizen of the state of Texas, brought this suit under the federal Employers' Liability Act (35 Stat. 65; 36 Stat. 291 [Comp. St. §§ 1010, 8657–8665]), in the District Court for the Eastern District of Texas against the plaintiff in error (which will be referred to as the defendant), a Missouri corporation, having its principal place of business in Kansas City, in that state. The question of the court's jurisdiction of the suit, which was brought in a district not that of the residence of either the plaintiff or the defendant, was duly raised; the ground on which the jurisdiction was denied being that the plaintiff was not engaged in interstate commerce when he received the injury complained of.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] The plaintiff was a member of a bridge gang employed in maintaining and repairing bridges constituting part of lines of railway in use by the defendant in interstate commerce. When he was injured, he, as a member of such gang, was assisting in unloading timbers and cross-ties from a car at a point near a bridge on the defendant's line of railway over the Calcasieu river, near Lake Charles, La.; the purpose being to use the timbers and ties so placed in the reconstruction or repair of that bridge as soon as the required material could be assembled, without causing an interruption of the use of the bridge in interstate commerce. It is settled that the repair of bridges or other structures constituting part of a railway in use as an instrumentality of interstate commerce is so closely related to such commerce as to be in legal contemplation a part of it, that a railway employé engaged in such work is to be regarded as engaged in interstate commerce, and that preparatory steps taken with the purpose of furthering the actual work of repair or reconstruction constitute a part of such commerce within the meaning of the act. Pederson v. Delaware, Lackawanna & Western R. R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; Southern Railway Co. v. Puckett, 244 U. S. 571, 37 Sup. Ct. 703, 61 L. Ed. 1321, Ann. Cas. 1918B, 69; Louisville & Nashville R. R. Co., v. Parker, 242 U. S. 13, 37 Sup. Ct. 4, 61 L. Ed. 119; Philadelphia, Baltimore & Washington R. R. Co. v. Smith, 250 U. S. 101, 39 Sup. Ct. 396, 63 L. Ed. ——.

The work in which the plaintiff was engaged when he was hurt was not more remote from the actual making of the repairs being prepared for than the work which was held to be a part of interstate commerce in the cases of Pederson v. Delaware, Lackawanna & Western R. R. Co., supra, and Philadelphia, Baltimore & Washington R. R. Co. v. Smith, supra. We are of opinion that the doing of that work is to be considered as a part of what was required to effect the repair of the bridge near which it was being done, and that the plaintiff in taking part in that work was engaged in interstate commerce. Unloading the ties at a place near enough to the bridge for them to be conveniently available for the use to which they were destined was a part of the task of getting the bridge repaired. That task was not merely anticipated, but had been entered upon when plaintiff was hurt.

[2] The defendant set up in bar of the action a written release, alleged to have been executed by the plaintiff for a valuable consideration. The plaintiff replied to the effect that he was induced to execute the release by described fraudulent representations made to him by the defendant's agent, and that plaintiff, promptly after ascertaining the falsity of such representations, returned the check given to him when the release was executed. The court overruled a request of the defendant, made at the opening of the trial, that the issue so raised be heard and determined, on the equity side of the court, prior to the trial of the other issues involved; and the court, over the defendant's objection, submitted that issue to the jury with the other issues so submitted.

There is a conflict of decisions on the question whether such an issue, raised as it was in the instant case, is one at law and triable by a

jury. The view prevailing in some courts is that the issue is not one at law, unless the fraud charged touches the execution of the questioned instrument, so as to be provable under a plea or replication of non est factum. In the case of Union Pacific Railway Co. v. Harris, 158 U. S. 326, 15 Sup. Ct. 843, 39 L. Ed. 1003, such an issue was treated as one triable by a jury in an action at law. That was a suit for personal injuries, in which a release was pleaded as a bar to the action. The plaintiff replied that the release was obtained through misrepresentations and fraud, and that the plaintiff, while he was ill, signed the release in ignorance of its contents. The court held that there was no error in the instructions given in submitting those issues to the jury, and affirmed the judgment rendered for the plaintiff. Though fraud other than that touching the execution of the release was set up in the pleading attacking its validity, it was decided that there was no error in the action of the court in submitting to the jury the issues raised.

Upon a full consideration it was decided by the Circuit Court of Appeals for the Sixth Circuit, in the case of Wagner v. National Life Ins. Co., 90 Fed. 395, 33 C. C. A. 121, Circuit Judge Taft delivering the opinion, that it is proper in a suit at law for the plaintiff to meet a plea of release by a replication that the release was obtained by fraud, whether the fraud touches the execution, or consists in misrepresentation as to material facts inducing execution. Another well-considered case to the same effect is American Sign Co. v. Electro Lens Sign Co. (D. C.) 211 Fed. 196. What the plaintiff does, when he makes such a reply to a plea setting up a release, amounts to his saying that, because of the fraudulent misrepresentations alleged, the defendant is without right to maintain the defense based upon the release set up. A contract so procured is no more binding at law than in equity. It is competent for a court of law to decide that a transaction vitiated by fraud is not effective to confer the asserted right based upon it. Buzard v. Houston, 119 U. S. 347, 7 Sup. Ct. 249, 30 L. Ed. 451; Equitable Life Assur. Soc. v. Brown, 213 U. S. 25, 29 Sup. Ct. 404, 53 L. Ed. 682.

The sustaining of a replication such as the one in question does not require the giving of any equitable remedy or the application of any peculiarly equitable doctrine. The result is to sustain, on a ground cognizable in a court of law, a denial of the defendant's asserted right to maintain a defense based upon an instrument which is unenforceable because the plaintiff was led into making it by fraudulent misrepresentations. There seems to be no necessity of resorting to a court of equity to prevent the enforcement, by action or by defense, of an unsealed instrument procured by fraud. The cancellation and surrender of such an instrument are not necessary to prevent it being availed of by a party claiming under it. We are of opinion that reason and authority support the conclusion that the issue raised by the reply to the plea setting up the release was properly submitted to the jury.

It is insisted that there was no evidence to support a finding that the release was procured by fraud. The evidence without dispute showed that the plaintiff was seriously injured. While he was still in the hospital undergoing treatment, he was approached by W. C.

Rochelle, the defendant's claim agent, on the subject of a settlement of the claim based upon the injury. There were considerable negotiations; the plaintiff demanding the payment of more than was offered, claiming that he was permanently disabled, "that he was knocked out, that his bridge building was over," and Rochelle insisting that plaintiff would ultimately make a complete recovery and be able to do the same work he was doing before. While matters were in this situation the plaintiff consented to be examined by three physicians, named and employed by Rochelle. The examinations were made; the physicians reporting to Rochelle, not to the plaintiff. There was evidence tending to prove that thereafter the plaintiff was influenced to make the settlement evidenced by the release by statements made by Rochelle to him to the effect that the doctors who had examined him said that his injuries were not permanent, and that he would be able to go to work again in a very short time.

There was evidence tending to prove that the plaintiff was permanently disabled, and that at the time Rochelle made the statements attributed to him he had received from one of the examining physicians a written report, which not only did not show that that physician considered the injuries not permanent, but plainly indicated that he considered them very serious; there being no suggestion in that report of the likelihood of the plaintiff's recovery. In view of the existence of that report, the withholding of it from the plaintiff, and Rochelle's knowledge of its contents, the statements attributed to the latter well could be regarded as fraudulent representations, capable of being effective in inducing the plaintiff to consent to the settlement evidenced by the release, which he promptly repudiated upon being informed by another physician, on the day the release was signed, that he had been deceived as to the seriousness of his injuries. Without regard to other evidence adduced, that which has been referred to justified the submission to the jury of the issue raised as to the validity of the release.

[3] There is no merit in the contention that the evidence without dispute showed that the injury to the plaintiff was due to a risk which he assumed, and was not attributable to negligence of a coemployé. There was evidence tending to prove that, while plaintiff was standing near a car where he was required to be to help in unloading ties therefrom, he was struck by one or more ties, which fell from the car in consequence of another employé stepping on ties on the car after the removal, preparatory to unloading, of the stakes or standards which held them in the position in which they were placed when loaded on the car. There was evidence to support the conclusion that the ties were so placed that they would not have fallen after the removal of the supports, if they had not been caused to do so by a man on the car stepping on them. The plaintiff did not assume the risk due to the negligence of a coemployé in causing the fall of the ties, where the plaintiff was endangered thereby.

The conclusion is that the record does not show that any reversible error was committed.

The judgment is affirmed.