[Civil No. 2133. Filed February 7, 1924.]

[222 Pac. 1041.]

## ARIZONA EASTERN RAILROAD COMPANY, a Corporation, Appellant, v. CHARLES HEAD, Appellee.

1. MASTER AND SERVANT—IN SUIT BY INJURED RAILROAD EMPLOYEE UNDER STATE LIABILITY LAW, IN ABSENCE OF EVIDENCE ASSUMED CARLOAD OF TIES HE WAS UNLOADING WAS INTRASTATE SHIPMENT.—In an action under the Employers' Liability Law (Civ. Code 1913, pars. 3153–3162), for injury to a railroad employee assisting to unload a carload of cross-ties, wherein defendant sought to avoid liability on the ground that he was engaged in interstate commerce, and wherein there was no evidence as to

---

1. Constitutionality, application and effect of federal Employers' Liability Act, see notes in 47 L. R. A. (N. S.) 38; 48 L. R. A. (N. S.) 987; L. R. A. 1915C, 47. See, also, 18 R. C. L. 835.

where the shipment originated, it will be assumed it originated in this state and that the employees were employed in intrastate commerce, since the burden of proof was on defendant asserting interstate character of the shipment.

2. COMMERCE — INJURED RAILROAD EMPLOYEE'S WORK IN UNLOADING TIES FROM A CAR HELD NOT SO RELATED TO "INTERSTATE COMMERCE" AS TO BE PART OF IT.—Where a railroad employee was engaged when injured in helping to unload cross-ties from a flat car on a passing track where the ties were being stored to be used at indefinite places or times and required another movement before being placed in tracks used in interstate commerce, the ties and his work in connection therewith were not so closely related to "interstate commerce" as to be a part of it.

3. MASTER AND SERVANT—REFUSAL TO DIRECT VERDICT FOR RAILROAD ON GROUND EVIDENCE CONCLUSIVELY SHOWED EMPLOYEE WAS ENGAGED IN INTERSTATE COMMERCE HELD PROPER.—In a suit by an injured railroad employee under Employers' Liability Law (Civ. Code 1913, pars. 3153–3162), *held*, that the court properly refused to direct verdict for defendant on the ground that the evidence conclusively showed plaintiff was engaged in interstate commerce.

4. APPEAL AND ERROR — IN ABSENCE OF REQUESTED INSTRUCTION, HELD, ERROR NOT TO BE ASSIGNED ON FAILURE TO SUBMIT QUESTION WHETHER EVIDENCE BROUGHT INJURY TO RAILROAD EMPLOYEE WITHIN FEDERAL LAW.—In an employee's injury action, wherein defendant railroad claimed employment was in interstate commerce, and wherein it framed its entire case on the theory that the facts brought the case clearly within the federal Employers' Liability Act (U. S. Comp. Stats., §§ 8657–8665) and did not request an instruction submitting the question of fact as to whether conflicting evidence brought the case within such law, error cannot be assigned on failure to submit such question.

5. EVIDENCE—X-RAY PICTURES OF INJURIES COMPETENT.—In personal injury action, X-ray pictures of injuries taken by a physician of ten years' experience were competent.

---

2. What employees are engaged in interstate commerce within the meaning of the federal Employers' Liability Act, see notes in 10 A. L. R. 1184; 14 A. L. R. 732; 24 A. L. R. 634. See, also, 18 R. C. L. 850.

3. See 26 R. C. L. 1073.

5. X-ray photographs as evidence, see notes in 8 Ann. Cas. 435; Ann. Cas. 1916A, 776; Ann. Cas. 1918D, 998. See, also, 10 R. C. L. 1156.

See 3 C. J. 850; 12 C. J. 44; 22 C. J. 916; 26 Cyc. 1459.

APPEAL from a judgment of the Superior Court of the County of Maricopa.  R. C. Stanford, Judge. Order *remittitur* to be filed, otherwise judgment to be reversed with directions for new trial.

See, also, *infra*, p. 259, 224 Pac. 1057.

Mr. G. P. Bullard, for Appellant.

Messrs. Cox & Moore, for Appellee.

ROSS, J.—This action was brought by Charles Head against the Arizona Eastern Railroad Company to recover damages for personal injuries suffered by him while he was engaged in helping to unload a carload of cross-ties from a flat car located on a passing track of defendant at Queen Creek Station, Arizona.

The complaint alleges a cause of action under the Employers' Liability Law of this state (chapter 6, title 14, C. C. 1913) and does not therefore charge defendant with any negligence whatever. The answer denies the allegations of the complaint and alleges facts to establish that at the time of the injury plaintiff and defendant were engaged in interstate commerce. It also alleges that plaintiff's injury was caused by his own negligence and that at all events he assumed the risks.

The contention, therefore, on the one hand, was that the case was governed by the state law, and, on the other, by the federal Employers' Liability Act (8 Fed. Stats. Ann. [2d ed.], p. 1208 [U. S. Comp. Stats., §§ 8657–8665]). The distinction is very material for the reason that if plaintiff was at the time of his injury in intrastate service the local law entitles him to recover regardless of whether defendant was at fault or not; but, if in interstate service,

defendant would have the right to avail itself of certain common-law defenses.

The case was tried and submitted to the jury in accordance with plaintiff's theory. The defendant at the close of the case moved for a directed verdict upon the ground that the evidence showed that plaintiff's employment at the time of his injury was interstate and not intrastate, and upon the submission of the case to the jury defendant presented to the court, in various forms, requests for peremptory directions to the jury to find for it on the same ground, all of which were denied. The verdict was for $10,500 in favor of plaintiff, upon which judgment was entered. Defendant's motion for a new trial was denied.

The only question is whether the facts bring the case within the Employers' Liability Act of this state, for if they do not the plaintiff is without remedy because he neither alleges nor proves facts sufficient to constitute a cause of action under the federal Liability Act.

The defendant's line of railroad is about 100 miles long and lies entirely within the state of Arizona, extending from Phoenix to Christmas. Between the termini and thirty-five miles from Phoenix is Queen Creek Station, the place where plaintiff was hurt. Plaintiff was employed as a section-hand, his duties being to help keep defendant's track in repair and to do in that connection whatever the section-foreman of the Queen Creek section directed him to do.

On February 15, 1922, the defendant caused to be placed on its passing track at said station a carload of cross-ties, probably 250 to 500 in number. The day following plaintiff with four other section-hands was by the foreman put to unloading the car, and while doing so one of the ties on which he was standing turned and caused him to fall to the ground, some eight or ten feet, injuring him. These ties were sent

to the Queen Creek Station upon the request of the section-foreman, and were to be used for repairs to defendant's main line track. The rule in that regard was stated by defendant's general manager in the following language:

"After the roadmaster goes over the road and inspects the track, and after consulting with the engineer and maintenance of way man and foreman, they agree between them how many ties the foreman may need for renewal, and then it is arranged to buy and ship ties to the section."

After these ties were unloaded, they were piled or stacked near the passing track and about 100 yards from the station toolhouse. They were put there to be distributed and used over fourteen miles of track and were all placed in track by March 14, 1922; and after this load was used up another was ordered for Queen Creek.

There is no question but that the ties were for the repair of the main line track and were to be used for renewals. They were as a matter of fact placed in the track within the next thirty days after February 16th by the regular section-men of the Queen Creek section. We gather from the testimony that these ties were left at the section quarters at the Queen Creek Station to be used wherever necessary to replace other ties. The general manager said:

"Where the men were quartered at Queen Creek we kept other things like bolts, guard-rails and things like that at the section house. For the same purpose as ties, for the repairs to the track."

He further testified that the rule was that cross-ties were usually unloaded where they were to be used, and for that reason they would not leave them at the section-house.

Although defendant is an intrastate railroad, evidence was introduced showing that it does an interstate business, in that shipments originate on it to

points outside the state, and, conversely, shipments outside the state are billed directly over it to points in the state. There is no evidence as to where the carload of ties originated, and since the burden of proof is on the one who asserts its interstate character (18 R. C. L. 856, § 316), for the purposes of this case it will be assumed it originated in Arizona and that those engaged in its unloading were in that act employed in intrastate commerce. If plaintiff's work at the time he was injured can be considered work in interstate commerce, it is not because the ties he was unloading were an interstate shipment, but because of the ultimate purpose of defendant to use them in its roadbed to replace other ties that had become unsafe for the traffic; and this, we think, is the contention of the defendant.

It is asserted that because defendant's track was used in transporting intrastate and interstate commerce, and because these ties were to be used immediately in repairing the main line track, and were in fact placed therein as soon as possible, the plaintiff in the act of unloading the ties was engaged in work so closely related to interstate commerce as to be practically a part of it. The question thus presented is not without its difficulties, made so largely because the courts, wherever it has arisen, have not always come to the same conclusion. In one respect the courts seem to agree, and that is that the true test of employment in interstate commerce, in the sense intended by the federal Employers' Liability Act, is:

"Was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?"

This test was first announced in *Shanks* v. *Delaware L. & W. R. Co.*, 239 U. S. 556, L. R. A. 1916C, 797, 60 L. Ed. 436, 36 Sup. Ct. Rep. 188, (see, also, Rose's U. S. Notes), and because of its aptness has

been frequently employed by other courts. It is
the application of the facts to this test that has con-
fused and baffled the courts.

It seems perfectly sound to say plaintiff was not in
the unloading of the ties engaged in interstate com-
merce, and that if it be determined that his employ-
ment falls within the federal liability law it is be-
cause of the purpose ultimately to use the ties in re-
pairing a railroad track in use in transporting both
interstate and intrastate freight and passengers.

In the Shank case it was assumed, and the assump-
tion was predicated upon prior decisions cited, that
any employee "employed . . . in repairing or keep-
ing in usable condition a roadbed, bridge, engine, car,
or other instrument then in use in such transporta-
tion" was engaged in interstate commerce.    The court
cited *Pedersen* v. *Delaware L. & W. R. Co.*, 229 U. S.
146, Ann. Cas. 1914C, 153, 57 L. Ed. 1125, 33 Sup. Ct.
Rep. 648, 3 N. C. C. A. 779 (see, also, Rose's U. S.
Notes), as authority that one employed "in repairing
or keeping in usable condition a roadbed, bridge, . . .
then in use in such transportation," was engaged in
work in interstate commerce.    On that particular
question the Pedersen case is the one mostly quoted
and relied upon by the courts throughout the country.
The rule announced in it is invoked by the defendant
as decisive of this case.    In the Pedersen case the
plaintiff at the time he was injured was carrying
from a tool-car to a bridge some bolts or rivets which
were to be used by the employees that night or very
early the next morning in repairing the bridge; the
repair to consist in taking out an existing girder and
inserting a new one.    As against the railroad's con-
tention that Pedersen was not employed in interstate
commerce, the court held that he was and that the
fact that when injured he was not actually engaged
in removing the old girder and inserting the new
one, but was merely carrying to the place where that

work was to be done some of the material to be used therein, was immaterial. It was said:

"It was necessary to the repair of the bridge that the materials be at hand, and the act of taking them there was a part of that work. In other words, it was a minor task which was essentially a part of the larger one, as is the case when an engineer takes his engine from the roundhouse to the track on which are the cars he is to haul in interstate commerce."

If the use of the cross-ties, the plaintiff was unloading when he was hurt, had been as definitely destined as to time and place as the bolts or rivets in the Pedersen case, the rule announced in that case would be conclusive here. As we gather from the evidence, the ties to be replaced had not been located or marked, and therefore the place of use of those being unloaded was unknown, except that it was to be somewhere along a 14-mile segment of the main line track. At all events, it is obvious that the plaintiff in helping to unload the ties at Queen Creek Station, unlike the plaintiff in the Pedersen case, who was taking the bolts or rivets to the exact place of use, was not performing an act indicating definitely the place where the ties should be used in defendant's track nor when. In other words, in the Pedersen case "the work performed was the last manual labor performed before it was appropriated to its intended use" (*Kibler* v. *Davis,* 109 Neb. 837, 192 N. W. 732), whereas in the present case what the plaintiff was doing was not "the last manual labor performed" before the ties were appropriated to their intended use. The ties were to be taken from the point where they were unloaded to places, so far as the evidence is concerned, yet unascertained, except somewhere in the designated zone of fourteen miles, and used to replace ties not yet located or marked for renewal.

In *Chicago, B. & Q. R. Co.* v. *Harrington,* 241 U. S. 177, 60 L. Ed. 941, 36 Sup. Ct. Rep. 517 (see, also, Rose's U. S. Notes), Mr. Justice HUGHES wrote the opinion and, after stating that the plaintiff was a member of a railway switching crew engaged in moving loaded coal cars from a storage track to a shed where the coal was to be placed in bins or chutes and supplied as needed to locomotives used in both kinds of traffic, said:

"It is not important whether he [plaintiff] had previously been engaged in interstate commerce, or that it was contemplated that he would be so engaged after his immediate duty had been performed."

Thus it seems that it is not the general employment that characterizes the act as interstate or intrastate but what the employee was in fact doing at the time he was injured. In the Harrington case, under the facts stated, the court held that plaintiff was not engaged in interstate employment. It was said:

"Manifestly, there was no such close or direct relation to interstate transportation in the taking of the coal to the coal chutes. This was nothing more than the putting of the coal supply in a convenient place from which it could be taken as required for use."

This case was followed, upon a state of facts not materially different, in *Lehigh Valley R. Co.* v. *Barlow,* 244 U. S. 183, 61 L. Ed. 1070, 37 Sup. Ct. Rep. 515.

In *Delaware, L. & W. R. Co.* v. *Yurkonis,* 238 U. S. 439, 59 L. Ed. 1397, 35 Sup. Ct. Rep. 902 (see, also, Rose's U. S. Notes), the question involved was whether an employee of a railway company engaged in mining coal in its colliery for use in the operation of its trains in interstate commerce was himself employed in such commerce within the meaning of the federal Employers' Liability Act. The question was decided in the negative.

26 Ariz.—10

In *Hines* v. *Baechtel,* 137 Md. 513, 113 Atl. 126, the court undertook to state why the decisions in the above cases ruled against the employment as interstate, whereas in *Erie R. Co.* v. *Collins,* 253 U. S. 77, 64 L. Ed. 790, 40 Sup. Ct. Rep. 450, in which the employee was operating a pump supplying water to interstate and intrastate locomotives; and the case of *Erie R. Co.* v. *Szary,* 253 U. S. 86, 64 L. Ed. 794, 40 Sup. Ct. Rep. 454, in which the plaintiff prepared and delivered the sand which the engines required in intrastate and interstate transportation; and the case of *Southern Pacific Co.* v. *Industrial Accident Commission,* 251 U. S. 259, 10 A. L. R. 1181, 64 L. Ed. 258, 40 Sup. Ct. Rep. 130, in which the linemen kept in order the cable by which the motive power of the railroad company was conveyed—the determination was that the employment was interstate. The court stated the reason for the distinctions in the following language:

"The decisions to which we have referred appear to make a distinction between work which has a direct relation to the operation or equipment of interstate trains and that to which such a relation cannot be attributed. The employee who operated the pump supplying water to locomotives, and the one who prepared and delivered the sand which the engines required, and the lineman who kept in order the cable by which the motive power of the railway was conveyed, were all regarded as contributing directly to interstate transportation. But the mining or storage of coal, to be subsequently placed on the engines through the processes of a separate and distinct service, was considered to rest upon a different basis so far as the question of its relation to interstate commerce was concerned. While the coal was to be used on locomotives attached to interstate trains, yet the duties of the employees who mined the coal and stored it beside the tracks were fully completed when it was in a position where it was not available for its intended purpose without the independent ac-

tion of those assigned to the duty of transferring the fuel to the engines.''

As the placing of the coal in the chute for future use as required by engines operating in inter and intrastate commerce is a completed act in itself, so we think the unloading of the ties in the present case at the Queen Creek Station was also a completed act in itself, and before such cross-ties could become invested with interstate qualities they must pass into the hands of those immediately assigned to the duty of placing them in the roadbed of the defendant.

In *Morrison* v. *Chicago, M. & St. Paul Ry. Co.*, 103 Wash. 650, 175 Pac. 325, the employee at the time of his injury was a foreman in charge of a building and bridge gang of the railroad company. The gang was engaged in unloading concrete tiling to be used in replacing wooden culverts. The tiling had been shipped on five cars from Spokane and had landed at Mowry, a blind siding, three days before. This tiling was to be used as renewals of worn-out wooden culverts. It was to be applied to the roadbed whenever needed and whenever proper. At the time of the trial none of it had been used, and in that respect principally do the facts differ from the facts in the present case. The court in that case, in applying the usual test, said:

''The three essential factors to be considered are time, place, and intent. That is to say, was the act which the employee was performing in point of time, place, and intent so directly connected with interstate commerce as to constitute an integral part of interstate transportation?''

While the court stated that if the evidence had shown a definite program for the renewal of all wooden culverts with the cement tiling, it would have been inclined to hold the employee was engaged in interstate commerce, the element of time and place

for the use of the tiling being omitted, such conclusion was not to be indulged. Discussing the pertinent facts in connection with the test propounded, the court used this langauge:

"The unloading of the concrete tiles did not tend to facilitate interstate commerce, or, conversely, directly or immediately interfere with or hinder the movement of such commerce. It was work incident to the repair and upkeep of the road. It possessed the element of ultimate intent, but it lacked the other essentials time and place. The record would not sustain a holding that the tiling or any other considerable part of it was to be used immediately or within a reasonable time. It was to be used as needed for replacements, and was being stored for such future use, the place of its use being uncertain and the time when it might be used being indefinite, it had lost, if it ever possessed it, the character of interstate commerce."

The conclusion in the Morrison case must have met the approval of the Supreme Court of the United States, inasmuch as an application for a writ of *certiorari* to the Supreme Court of the state of Washington was by that court denied (249 U. S. 611, 63 L. Ed. 801, 39 Sup. Ct. Rep. 386).

In the present case the essential factor of "place" is absent, and the time is no more definite than the time in which the coal stored in the bin or chute was to be used by the interstate engine. If the plaintiff had been hurt while removing the cross-ties from Queen Creek Station to the places along the line of the track where they were to be placed in the track, or while placing them therein, he would clearly be within the rule announced in the Pedersen case.

The defendant relies upon a line of cases of which *Kansas City So. Ry. Co. v. Martin* (C. C. A.), 262 Fed. 241, is typical. In this case the plaintiff was a member of a bridge gang employed in maintaining and repairing bridges constituting a part of the lines of

railway in use by the defendant in interstate commerce. When he was injured he was assisting in unloading timbers and cross-ties from a car at a point near a bridge on defendant's line of railway, the timbers and ties to be placed in the reconstruction or repair of that bridge as soon as the required material could be assembled. It is easily seen that the three factors of time, place and intent concur in this case to make the employment interstate, and the cases cited by the court to support its conclusion that the service was interstate are based upon a state of facts in which such elements concur. In *Slatinka* v. *United States Railway Administration,* 194 Iowa, 159, 24 A. L. R. 608, 188 N. W. 20, the cases, federal and state, are collated and the distinguishing facts upon which they were founded, together with the decisions of the courts, are stated. The court concludes:

"It is impossible to harmonize all of the cases. We have reviewed a sufficient number of them to indicate the holding of the courts under various facts and conditions. Each case must of necessity be governed by its own particular facts, and the line of distinction between employment in interstate commerce and in intrastate commerce is not always easy of demarcation."

Many of the courts have found the same difficulty, and they have, in one way or another, so announced.

We think the handling by a section-hand of bridge timbers, or materials for bridges, or cross-ties, or rails, to be used for replacement or renewal, may be, if the place and time of their use is definite, in aid of interstate transportation; but when the essential factors of time or place are lacking, and when such materials are stored to be used at indefinite places or times and require another movement as in this case, under the rule as we deduce it from the decisions, they and the work in connection therewith

are not so closely related to interstate transportation as to be practically a part of it.

The facts in *Saxton* v. *E. P. & S. W. R. Co.*, 21 Ariz. 323, 188 Pac. 257, relied upon by defendant, are not such as to make the decision therein applicable here. Saxton was engaged in installing an electric block signal system along the line of an interstate railroad, to be used for the purpose of protecting trains of both kinds of traffic. The system was being actually attached to and becoming a physical part of the main line track of the carrier and clearly, under the rule in the Pedersen case, was in aid of interstate transportation.

Some nine or ten of defendant's assignments of error complain because the court refused peremptorily to direct the jury to return a verdict for it, on the ground that the evidence conclusively showed that plaintiff was employed in interstate commerce. From what we have said heretofore it is obvious that the court's refusal to so instruct was proper.

Complaint is also made because the court gave instructions as to the law under the Arizona Employers' Liability Law and did not submit to the jury the question of fact as to whether the evidence brought the case within the federal law. The defendant did not request any instruction of that character. Granting that there existed a conflict in the evidence upon the question, it seems that the defendant should have asked that the question be submitted to the jury.

In *Louisville & Nashville R. Co.* v. *Parker*, 242 U. S. 13, 61 L. Ed. 119, 37 Sup. Ct. Rep. 4, the attitude of the defendant railroad company was the same as the defendant in this case, both at the trial and in the matter of presenting error on appeal. The court disposed of the defendant's contention in the following language:

"But it is necessary to see how the case was dealt with in the trial court. The railroad company did not ask to go to the jury on the question whether the deceased was engaged in interstate commerce. It simply asked the court to direct a verdict, on the ground among others, that it appeared as matter of law that he was so engaged. But if the question had been left to the jury and they had disbelieved the testimony that the empty car was moved for the ulterior purpose of interstate commerce there would have been no error of law in allowing a verdict for the plaintiff to stand. It is true that the judge seems to have assumed that the business in hand was intrastate, but the only objection indicated was to his not ruling the contrary and as the railroad did not ask to go to the jury and the only ruling requested was properly denied the judgment must stand."

The theory of defendant at the trial was that the facts of the case brought it clearly within the federal law, and that plaintiff had mistaken his remedy. The defendant framed its pleadings, motions, instructions, and submitted its evidence upon that theory. Without asking the court to submit any question of fact to the jury, it assumed the facts presented only a question of law. The court did not rule upon any request to submit to the jury the question of defendant's liability under the federal Employers' Liability Act, and therefore its assignment based upon that theory is not properly before us.

Defendant complains because of the admission of X-ray pictures of the injuries plaintiff is alleged to have sustained, its objection to such evidence being that it was not shown how the pictures were taken. The physician who took these pictures, as shown by the evidence, had had ten years' experience in such work. In fact, his competency was admitted. It is obvious the court committed no error in the admission of such pictures in evidence. 17 Cyc. 420.

It would serve no useful purpose to consider any of the other assignments of error, and we shall pass

them all, except one, and that is that the verdict and judgment were unconscionably excessive. After a careful reading of the evidence as to the character and extent of the injuries, we are of the opinion that this assignment is good and should be sustained. We think the verdict of $10,500 should be reduced to $4,000.

Should the plaintiff elect to file in this court, within twenty days hereafter, a *remittitur* in the amount of $6,500, judgment will be entered in his favor against the defendant railroad company and the sureties upon the bond on appeal for the remainder of the judgment appealed from, to wit, $4,000, with costs in the trial court and in this court; otherwise let the judgment be reversed and the cause remanded for a new trial.

McALISTER, C. J., and LYMAN, J., concur.