BURKIE SAILOR, Administratrix of Estate of MARION EDGAR SAILOR, Appellant, v. MISSOURI PACIFIC RAILROAD COMPANY.—18 S. W. (2d) 82.

Division One, March 29, 1929.

*Butcher & Knoop, C. Fletcher Douglass* and *A. R. James* for appellant.

*Thomas J. Cole, W. H. Meschede* and *Grover & Graves* for respondent.

GANTT, J.—Action under the Federal Employers' Liability Act (U. S. Comp. St., secs. 8657-8665) by Burkie Sailor, administratrix of the estate of Marion Edgar Sailor, deceased, for damages for the death of Sailor, alleged to have been caused by the negligence of the defendant.

The defendant, after introducing in evidence the certificate of death of Sailor, rested and submitted the case on the evidence for

plaintiff. A verdict for $12,500 was returned, and judgment entered thereon. The motion for a new trial was sustained, for the reason the deceased at the time of the injury was not employed in interstate commerce, and the instruction in the nature of a demurrer at the close of all the evidence should have been given.

Plaintiff appealed from the order granting a new trial. The facts are as follows:

Malta Bend, Missouri, located about the center of a six-mile section of defendant's railroad, is the headquarters of the section men and the storage place for tools used and supplies needed on that part of the railroad. The section foreman and men have the care of this section of track. They cut grass, clean ditches, tighten bolts, raise the joints, unload material and transport it to points where needed. Before January of each year, and usually in the fall, the foreman makes an estimate of the number of ties needed during the following year, and forwards same to the roadmaster, who, from time to time during the year, sends ties to Malta Bend for general renewal purposes. This estimate is the result of an inspection which consists of spotting the ties likely to need replacing. A tie spotted may not need to be replaced during the following year, and ties may be needed at places overlooked on inspection. While the ties received are for use on that part of the track, emergencies may arise which would cause a removal of the ties to another section. On arrival of the ties at Malta Bend they are unloaded at the regular unloading place for heavy timbers and ties. At times when it does not interfere with the regular work, the ties are unloaded from a push car where needed along the right-of-way and afterwards placed under the track. On July 10, 1923, the section had ninety-two ties on hand and was not in need of ties for immediate use; however, a car of ties was received that day and placed on the sidetrack at Malta Bend at the usual unloading place. Under orders from the foreman, the following morning the section men, including the deceased, threw the ties from the car to the ground, where they remained until needed. The ties had been treated with a solution of creosote, and it is claimed deceased was poisoned and burned in handling them. The car was unloaded by eleven A. M. of that day, and the men worked on low joints in the track until noon. Deceased did not return to work that afternoon because of his condition, but the other men loaded fifteen or twenty ties on a push car and distributed them along the right-of-way, after which, on account of the creosote, they discontinued the work. On July 26, 1923, they resumed the distribution of ties and were two months putting them under the track.

Defendant claims the testimony does not show that the ties distributed on the afternoon of July 11, 1923, were from the ties unloaded that morning; that other ties were in storage, and the ties

then distributed might have been taken from those on hand when the car arrived. We think the jury could infer that the ties came from the car from the testimony of the section foreman that he discontinued the distribution of ties because the creosote burned them. A few days after the car was unloaded the deceased returned to work on the section. After a short time he left the section to work in an elevator at Malta Bend, where he remained until the latter part of September, when he again returned to the section and worked until he went to a hospital in Kansas City, in April, 1924, where he died May 12, 1924.

Plaintiff challenges the order granting a new trial.

It is not claimed the shipment of ties was interstate or that the unloading of them was the delivery of such a shipment. Defendant was engaged in interstate commerce. Therefore the question arises on the nature of the employment of the deceased. His general employment was of an interstate character. From this plaintiff argues that any work of the deceased was drawn into and became a part of interstate commerce. The rule is otherwise. The question is determined by the nature of the work at the time of the injury. [C. B. & Q. Railroad Co. v. Harrington, 241 U. S. 177, 60 L. Ed. 941.] Thus the question is, Was the work so closely related to interstate commerce as to be a part of it?

In Morrison v. C. M. & St. P. Ry. Co., 103 Wash. 650, 175 Pac. 324, the injured employee was foreman of a building-and-bridge gang. They were engaged in unloading concrete tiling to be used as renewals of worn out wooden culverts. In the course of the opinion, the court said (l. c. 634):

"We find ourselves unable to harmonize the decisions of the Supreme Court upon the Federal Employers' Liability Act. It is patent, however, that the law is intended to be applied in spirit rather than by letter. It is useless to attempt an accurate definition of an act, or series of acts, which will bring a case within, or place it without, the provisions of the statute. As it seems to us, the dominant thought underlying the question of whether in a given case an employee was or was not engaged in interstate commerce is this: Would the performance of the act in which the employee was engaged directly and immediately tend to facilitate the movement of interstate commerce, or, conversely, would the failure to perform the act directly and immediately interfere with or hinder the movement of such commerce? In applying this test the three essential factors to be considered are time, place and intent. That is to say; was the act which the employee was performing, in point of time, place and intent, so directly connected with interstate commerce as to constitute an integral part of interstate transportation. If it was, the employee is entitled to the protection of the act. If not, he is not."

It was further said (l. c. 657):

"We had gathered the impression from respondent's brief and argument that the company was engaged in the carrying out of a definite program for the renewal of all wooden culverts with the concrete tiling, in which event we would incline to the belief that the act might fall within the benefit of the Employers' Liability Act. But we hardly think the record when taken as a whole will bear out this assumption. If it were true, it would have been a matter of easy proof."

On the facts, the court ruled as follows:

"The unloading of the concrete tiles did not tend to facilitate interstate commerce, or, conversely, directly or immediately interfere with or hinder the movement of such commerce. It was work incident to the repair and upkeep of the road. It possessed the element ultimate intent, but it lacked the other essentials, time and place. The record would not sustain a holding that the tiling or any other considerable part of it was to be used immediately or within a reasonable time. It was to be used as needed for replacements, and was being stored for such future use; the place of its use being uncertain and the time when it might be used being indefinite, it had lost, if it ever possessed, the character of interstate commerce."

In the Morrison case a petition for writ of certiorari was denied by the United States Supreme Court, 249 U. S. 611, 63 L. Ed. 801, so the ruling therein was undoubtedly approved by that court.

In Arizona Eastern Railroad Co. v. Head, 222 Pac. 1041, the employee was injured while unloading a car of ties at a station of the railroad. The facts are similar to those of the case at bar, and the court in ruling the question said (l. c. 1044):

"At all events, it is obvious that the plaintiff in helping to unload the ties at Queen Creek Station, unlike the plaintiff in the Pedersen case, who was taking the bolts or rivets to the exact place of use, was not performing an act indicating definitely the place where the ties should be used in defendant's track nor when."

To the same effect: Fenstermacher v. C. R. I. & P. Railroad Co., 274 S. W. 718; Hudson & M. Railroad Co. v. Iorio, 239 Fed. 885; C. B. & Q. Railroad Co. v. Harrington, 241 U. S. 177, 60 L. Ed. 941.

Plaintiff relies on the case of Pedersen v. Del. Lack. & Western R. Co., 229 U. S. 146, where an employee, under orders from a foreman, was carrying some bolts or rivets from the tool car to the bridge to be used that night or early the next morning in the repair of a bridge. While walking along the track he was killed. It was held the act of taking the bolts or rivets to the bridge was so closely related to interstate commerce as to be a part of it.

It must be conceded the ties were shipped in response to a requisition for supplies. There was no definite program for the renewal of all

ties of the section with new ties, and the spotting of ties in the fall of each year likely to need replacement did not indicate either a definite time or program for renewal. The ties were to be supplies on hand to be drawn on when needed. They so remained, though not stacked, until started on the way for use under the track, when, under the Pedersen case, supra, they became so closely related to interstate commerce as to be a part of it.

Plaintiff cites the following cases as sustaining her contention that the unloading of the ties was so closely related to interstate commerce as to be a part of it: Industrial Commission v. Davis, 259 U. S. 182, l. c. 187; Oglesby v. Railroad, 318 Mo. 79, 1 S. W. (2d) 172; Manes v. Railroad, 220 S. W. 14; Kansas City Southern Ry. Co. v. Martin, 262 Fed. 241; Glidewell v. Railroad, 236 S. W. 677; Mo. Pac. Ry. Co. v. Hall, 255 S. W. 707; Louisville & N. Railroad Co. v. Brandenburg, 270 S. W. 1; Kamboris v. Railroad, 146 Pac. 1097; Erie Railroad Co. v. Collins, 259 Fed. 172, affirmed 253 U. S. 77; Erie Railroad Co. v. Szary, 253 U. S. 86.]

In those cases an injured employee was working on an instrumentality of interstate commerce, or with the debris from material used in repairing an instrumentality of such commerce, or with material or fuel about to be used in connection with an instrumentality of such commerce.

It follows the deceased at the time of his injury was not performing a work so closely related to interstate commerce as to be a part of it. The order granting a new trial is affirmed and the cause remanded. All concur.