THOMAS ALDRIDGE v. WABASH RAILWAY COMPANY, a Corporation, Appellant.—73 S. W. (2d) 401.

Division Two, June 19, 1934.*

*Homer Hall* and *Woodward & Evans* for appellant.

*NOTE: Opinion filed at September Term, 1933, December 20, 1933; motion for rehearing filed; motion overruled June 19, 1934; motion to transfer to Court en Banc filed; motion overruled at May Term, June 19, 1934.

*N. Murry Edwards* and *Robert A. Harris* for respondent.

FITZSIMMONS, C.—D'efendant railway company appeals from a judgment of the Circuit Court, City of St. Louis, in the sum of $10,000. Plaintiff sued for damages for personal injuries under the Federal Employers' Liability Act (Sec. 51, Chap. 2, Title 45, Railroads, U. S. Code Annotated). Defendant denies that that act is applicable to this case.

Plaintiff alleged and gave testimony tending to prove that, while he was employed as a section hand by defendant and, with others, was unloading creosoted ties, his fellow servants permitted a tie to strike the side of the car. The result was a splash of creosote into his eyes and consequent loss of sight which was about total in one eye. Defendant not only denied that plaintiff at the time was engaged in interstate commerce, but it also pleaded contributory negligence and assumption of risk. In addition it offered evidence tending to prove that the condition of plaintiff's eye was due to disease and not to injury. But the only question for decision upon this appeal is whether there was evidence to bring the case within the purview of the Federal Employers' Liability Act.

Plaintiff testified that he was hired as a section hand by J. W. Tidwell, one of defendant's section foremen. Plaintiff began work in defendant's St. Louis Avenue yards, near the Mississippi River in St. Louis, on July 25, 1929, and early that morning he assisted in cleaning up scrap and other material. About nine o'clock that morning a car of creosoted ties was spotted on track 14, where it ended at North Market Street. This track ran north and south and at right,

angles to North Market Street, which was an east and west highway. Unloading of the ties was commenced shortly after the car was spotted. The car was a high-sided coal car. Four men, two at each end, took hold of each tie, and to a rhythm of orders "pick up," "head high" and "throw" intoned by a straw boss, they lifted a tie, carried it to the side of the car, raised it to the level of their heads and threw it overboard. During one of these operations and on July 26, the second day of plaintiff's employment, the men on the opposite end of a tie from plaintiff failed to throw their end of the tie high enough to clear the side of the car. Accordingly the tie struck on the top and thus caused creosote to splash back and injure his eyes.

I. Plaintiff rests the liability of defendant under the Federal Act upon two grounds. The first of these is that the shipment of ties which plaintiff was helping to unload had come from Madison, Illinois, to St. Louis, Missouri, that the interstate transportation was not ended until the car was unloaded and that the unloading of the shipment was so closely related to the interstate transportation of the ties as to be practically a part of it. That Madison, Illinois, was the point of origin of the ties was proved by record evidence which defendant furnished to plaintiff. A shipping order showed that defendant Wabash Railway Company, on July 18, 1929, shipped from Madison, Illinois, Wabash car No. 8646, which was the car which plaintiff was helping to unload when injured. This car was loaded with 496 creosoted ties, and was consigned to Wabash Railway Company, c/o Lloyd Brune, St. Louis Avenue, St. Louis, Missouri. The shipping order was stamped: "Received July 19, 1929, Wabash Railway Co." A cross-tie inspection report contained the same data as the shipping order except the stamp of date of arrival of car No. 8646. Appended to the report was a printed instruction to unload promptly upon arrival, and beneath this was a signed statement that the car was unloaded at St. Louis Avenue station on July 27, 1929. A switching ticket disclosed that the car in question was switched to the Wabash Railway Company, c/o L. Brune, at St. Louis Avenue and was there received on July 19, 1929.

The record establishes beyond dispute that the St. Louis Avenue yards consisted of twenty-three side tracks, connected by means of a lead track with a main track of defendant running between Franklin Avenue in St. Louis, Missouri, and Ferguson, Missouri. Car No. 8646 was one of six or seven cars of creosoted ties which were shipped to the St. Louis Avenue yard at the same time. J. W. Tidwell, defendant's section foreman at the time of the accident, had jurisdiction of tracks between Branch Street and Franklin Avenue. The St. Louis yards were included in this section. His reports revealed that on the

days that plaintiff worked under him, Tidwell had his men variously employed at walking track, tending switch lights, cleaning alleys, wheeling rock, removing an old tool house and unloading ties. Tidwell was notified, by whom it does not appear, that the cars of ties were in the yard. He had other work to do, particularly to move the tool house, and hence he did not order a car of ties spotted on track 14 at North Market Street until the night of July 25. According to his records, the men began unloading this car on July 26 and completed the work that day. Plaintiff testified that the car was spotted early on July 25, that the unloading began that day and was finished on July 26. For the purpose of this inquiry we will accept plaintiff's dates of the spotting of the car on track 14 and of its subsequent unloading.

There is nothing in the record to warrant the inference that section foreman Tidwell ordered the car in question shipped from Madison, Illinois, to Wabash Railway Company, c/o Lloyd Brune at St. Louis Avenue. The record does not disclose in what capacity Lloyd Brune served the defendant. But the documentary evidence, offered by plaintiff and furnished by defendant, shows that the car which defendant shipped from Madison, Illinois, on July 18, 1929, to itself at St. Louis Avenue in St. Louis, Missouri, was received by it there on July 19. Obviously the car, when received, was placed on one of the twenty-three sidings in the yard. The testimony being undisputed that the section foreman on the night of July 24 or 25, ordered a car of ties spotted on track 14, at North Market Street, the south end of the St. Louis Avenue yards, it is our opinion that car No. 8646 lost its interstate status before it was moved from a siding at its point of original delivery to defendant, and that the transportation of the car to North Market Street at the request of Tidwell, was a second movement, intrastate in character. We cite and quote a few authorities in support of this view.

In Lehigh Valley Railroad Co. v. Barlow, 244 U. S. 183, 61 L. Ed. 1070, 37 Sup. Ct. 515, Barlow, a member of a switching crew, hired by the railroad company, was assisting in placing three cars containing supply coal for his employer on an unloading trestle within its yards at Cortland, New York. He was injured while he was so engaged and he sued under the Federal Employers' Liability Act. The cars had been transported from a point in Pennsylvania. One of the cars of coal had been received in the Cortland yards on July 3, 1912, and two on July 10, following. The accident happened on July 27, 1912. The United States Supreme Court ruled (244 U. S. l. c. 184): "We think their interstate movement terminated before the cars left the sidings, and that while removing them the switching crew was not employed in interstate commerce."

In Cruse v. Chicago, Rock Island and Pacific Railway Co., 133 Kan. 340, a car of material consigned to defendant railroad company, was transported from a point in Iowa, to defendant's switching yards in Kansas City, Kansas. The car was switched to the assembly track in the material yard where it was received and its contents examined by the storekeeper. Four days later the car was moved to another track where its cargo was to be unloaded and used. Plaintiff was injured while he was unloading the car and he sued for damages under the Federal Employers' Liability Act. The Kansas Supreme Court held that plaintiff was not injured while he was engaged in interstate commerce within the meaning of the act. The court in its opinion said (133 Kan. l. c. 343): "Under the undisputed evidence as to reception of the building material by the storekeeper after it was placed on the assembly track, it is reasonably clear that it was a local movement after the interstate character of the shipment had ended. Thereafter the placing of the material was no more than a part of the internal economy of the material yard to be moved and placed where it was most needed to carry on the construction and repair work." The material in this car was to be used in a program of rebuilding 500 cars. Some of the Federal authorities cited by the Kansas Supreme Court in this case were: Railroad Co. v. Harrington, 241 U. S. 177; Railroad Co. v. Barlow, supra; Railroad Co. v. Settle, 260 U. S. 166. The observations of the Kansas Supreme Court are pertinent here.

II. The second asserted ground of the applicability of the Federal Act is that the ties which plaintiff was unloading when injured were intended for use in the repair and construction of defendant's roadbed, switches and tracks in its St. Louis Avenue switching yards which were connected to the main line over which defendant transported intrastate and interstate commerce. Therefore plaintiff was engaged in interstate commerce when he was injured. This contention cannot be sustained for two reasons. The first is that we find no evidence in the record that defendant's St. Louis Avenue yard was used in or was an instrumentality of interstate commerce. A main track (which we understand to be the main line which plaintiff mentions) ran between Franklin Avenue, St. Louis, Missouri, and Ferguson, Missouri, as we have stated heretofore. This track at Ferguson connected with defendant's main line, which ran to Union Station in St. Louis and yards adjacent thereto. The Franklin Avenue-Ferguson track or line and the main line, intercepted at Ferguson, were separate gateways of defendant to and from St. Louis. There was evidence that passenger trains ran upon the Franklin Ave-

nue-Ferguson track between those two points and also between Franklin Avenue in St. Louis and the city of St. Charles, Missouri, a city on the main line beyond Ferguson. These were intrastate trains.

We have seen that the St. Louis Avenue yard in which the accident here involved occurred consists of twenty-three side tracks connected by means of a lead track with the Franklin Avenue-Ferguson track. Some of these side tracks were described as team tracks, and witnesses testified that they saw freight being unloaded from cars on these tracks into vehicles. Some of this freight was fruit. But none of these cars was identified by number, point of origin, destination, route of transportation, consignor, consignee, time of arrival or of unloading, or by any other means by which its interstate character might be proved or from which the interstate usage and instrumentality of the St. Louis Avenue yard could be inferred. The testimony of the passage of intrastate passenger trains over the Franklin Avenue-Ferguson track was the only evidence of the character of commerce which defendant transported through this yard, unless we regard the tie car which plaintiff was unloading when hurt as evidence of interstate usage of the yards. It does not seem to us that this gap in the evidence is cured by the admission by defendant in its answer "that it was at all times mentioned in plaintiff's petition, and now is a railroad corporation duly organized and existing under and by virtue of the laws of the State of Indiana, and that it was and is a citizen and resident of that state, and that it was and is a common carrier of freight and passengers between the city of St. Louis in the State of Missouri and the State of Illinois." For defendant followed this admission with a denial of each and every other allegation in plaintiff's petition. And this general denial went to the allegation of plaintiff's petition that, at the time he was injured he "was engaged in unloading a coal car then and there being used by the defendant in interstate commerce and engaged by it in interstate commerce, and that plaintiff at the time he was injured was engaged in interstate commerce, and that both plaintiff and defendant were at said time engaged in interstate commerce." Let us add that plaintiff by these allegations well stated the conditions that had to be present to give him the right to invoke the Federal Employers' Liability Act. These conditions are also aptly put in Wagner v. Chicago, etc., Ry. Co., 200 Ill. App. 305, in these words:

"It is obvious if a servant is employed in interstate commerce at any given time and place his master is also then and there so engaged. But the converse is not necessarily true. The defendant in this case is all the time engaged in interstate commerce, but many of its employees are at different times and places not so employed. The Federal Act applies only when the carriers and their employees

are both engaged in interstate commerce. [Second Employers' Liability Cases, 223 U. S. 1, 49 (32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44), 1 N. C. C. A. 875; Ill. Cent. Railroad Co. v. Behrens, 233 U. S. 473 (34 Sup. Ct. 646, 58 L. Ed. 1051, Am. Cas. 1914C, 163), 10 N. C. C. A. 153.]"

The second reason why we cannot accept plaintiff's argument that he should be entitled to the benefit of the Federal Act is that even if the interstate instrumentality of the St. Louis Avenue yards be conceded, plaintiff while unloading the ties was not engaged in interstate commerce within the meaning of the Liability Act. The car which plaintiff was helping to unload when he was injured contained 496 creosoted ties. They were piled, as unloaded. About four days after the car was unloaded, some ties were taken from the pile on a push car to some point in the yard. The car in which plaintiff had worked was one of seven carloads of ties which had been shipped into the yard the ties being intended for repairs and replacements of defective ties which had been marked during the fall of the preceding year. The work which plaintiff was doing when injured was the unloading of these ties, to be stored in a pile, for future use in repairs and replacements. Plaintiff while so employed was not engaged in interstate transportation or in work so closely related to it as to be practically a part of it. We reach this conclusion upon the authority of Sailor v. Mo. Pac. Ry. Co., 322 Mo. 396, 18 S. W. (2d) 82 (a case almost identical in facts); Fenstermacher v. Chicago, R. I. & P. Ry. Co., 309 Mo. 475, 274 S. W. 718; Morrison v. Chicago, M. and St. P. Ry. Co., 103 Wash. 650, 175 Pac. 325; Arizona Eastern Ry. Co. v. Head, 26 Ariz. 137, 222 Pac. 1041. In the latter case, the court said of a plaintiff who was injured while unloading ties and who claimed the benefit of the Federal Employers' Liability Act, that he "was not performing an act indicating definitely where the ties should be used in defendant's track nor when." The same is true of the evidence in this case.

In the earlier case of Pedersen v. Railroad Co. (1913), 229 U. S. 146, the test applied was: "Is the work in question a part of interstate commerce in which the carrier is engaged?" But the United States Supreme Court has abandoned this test and it now applies the more precise rule first stated in Shanks v. Railroad Co. (1916), 238 U. S. 556, namely: "Was the employee, at the time of the injury, in interstate transportation, or in work so closely related to it as to be practically a part of it?" This rule was applied in Railroad v. Harrington, 241 U. S. 177, where the facts were similar to those here and where, under the test of the Shanks case, the elements of interstate transportation were held to be wanting. Reference is made to Benson v. Missouri Pacific Railroad Co., 334 Mo. 851, 69 S.

596

W. (2d) 656, decided at this delivery, for a more extended examination of this rule, and of other applicable cases. In the Benson case the plaintiff sought compensation under the Missouri Compensation Act. The defendant railroad company, by way of defense, set up that the Federal Liability Act exclusively governed. While this case and the Benson case are the reverse of each other, many authorities are in point in each case.

We being of opinion that the Federal Employers' Liability Act is not applicable, the judgment of the court below is reversed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All the judges concur.