# EDMOND FENSTERMACHER v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.*

### Division Two, July 14, 1925.

1. **INTERSTATE COMMERCE: Moving Poles from One Place to Another within State.** The defendant railroad company, engaged in interstate commerce, operated a telegraph line, as an appurtenance to its railroad, for the purpose of facilitating and protecting the movement of its trains used in interstate commerce. It was its duty to keep the line in repair, and it had poles stored at one point in this State, which were designed for use in repairing its said telegraph line. The plaintiff, employed as a member of defendant's bridge-and-building gang, then engaged in work at the point where the poles were stored, in helping to place a pole on a flat car, to be hauled by others to another point in this State, was injured. *Held*, that he was not at the time of his injury engaged in interstate commerce, nor engaged in work so closely connected with interstate commerce as to be practically a part of it, and therefore he cannot maintain a suit for his injuries under the Federal Employers' Liability Act.

2. ——: **Interstate Facility.** The fact that the telegraph line was being used in interstate commerce cannot authorize a decision that plaintiff was engaged in interstate commerce when the sole work in which he was engaged at the time he was injured was the loading of a telegraph pole upon a flat car at one point in this State to be hauled by others to another point in this State, there to be used ultimately by others in repairing the line. The Federal Employers' Liability Act is not applicable to an injury received in such circumstances.

3. ——: ——: **Connected with Interstate Commerce.** A telegraph line, maintained by an interstate railroad and used by it in facilitating and protecting interstate commerce, becomes definitely impressed with the character of an interstate facility, and the railroad's employee engaged in operating or repairing such facility is at least engaged in work so closely related to interstate commerce as to be a part of it. But that does not mean that a railroad employee engaged solely in loading poles on a flat car which will ultimately enter into the repair of such telegraph line and thereby

*NOTE.—In this case an application to the Supreme Court of the United States for a writ of *certiorari* to the Supreme Court of Missouri was denied October 26, 1925.

. become a part of it, no matter how remotely, is engaged in work so closely connected with interstate commerce as to be a part of it. If there must be several other handlings of the pole by others before it becomes a part of the line, the connection is too remote, and he is no more engaged in making the pole a part of the interstate facility than is the man who cuts the tree in the forest which is designed for use as a pole in repairing the line.

Corpus Juris-Cyc. References: Appeal and Error, 4 C. J., Section 2541, p. 650, n. 37. Commerce, 12 C. J., Section 53, p. 44 n. 14; Section 54, p. 44, n. 18; Section 55, p. 46, n. 23.

Appeal from Platte Circuit Court.—*Hon. A. M. Tibbels,* Judge.

REVERSED (*without prejudice*).

*Luther Burns* and *John E. Dolman* for appellant.

Plaintiff was not employed in interstate commerce, nor in work so closely related to interstate commerce as to become a part of it, nor was defendant engaged in interstate commerce at the time of the alleged injury. The telegraph poles had not yet become instruments of interstate commerce, and the transportation by the defendant of the poles to Trenton, was wholly within the State. Plaintiff therefore cannot recover, and the court erred in refusing defendant's peremptory instruction as requested. C., B. & Q. Ry. Co. v. Harrington, 241 U. S. 177, 60 L. Ed. 941; Shanks v. Delaware L. & W. Railroad, 239 U. S. 556; Delaware Railroad Co. v. Yurkonis, 238 U. S. 439, 59 L. Ed. 1397; Dupuis v. L. Ry. & Nav. Co., 99 So. 709; Nash v. Ry. Co., 242 U. S. 620, 61 L. Ed. 531; B. & O. Ry. Co. v. Branson, 242 U. S. 624, 61 L. Ed. 534; Ill. Cent. Ry. Co. v. Cousins, 241 U. S. 641; Schauffele v. Director General, 276 Fed. 115; M. & St. L. Ry. v. Winters, 242 U. S. 353, 61 L. Ed. 358; I. C. Ry. Co. v. Behrens, 233 U. S. 473; 58 L. Ed. 1051; Pederson v. Ry. Co., 229 U. S. 146, 57 L. Ed. 1125; St. L. & S. F. Ry. Co. v. Seale, 229 U. S. 156, 57 L. Ed. 1129. The test of the work is not the instrument upon which it is performed. Industrial Com. Co. v. Davis, 259 U. S. 182, 186, 77 L. Ed. 888;

Chicago K. & S. Ry. Co. v. Kindle-Parker, 234 Fed. 1, 246 U. S. 657, 62 L. Ed. 925.

*James H. Hull, Platt Hubbell* and *Geo. H. Hubbell* for respondent.

Respondent was injured while assisting in the work of loading some telegraph poles for the immediate repair of the telegraph line which had been used and was, then and there, in use, as an instrumentality of interstate commerce and his right of recovery is governed by the Federal Employers Liability Act. Coal & Coke Ry. Co. v. Deal, 231 Fed. 606, 145 C. C. A. 490, 215 Fed. 285, 232 Fed. 1020, 245 U. S. 681, 62 L. Ed. 544; Yarde v. Hines, 209 Mo. App. 547, 24 A. L. R. 643; Williams v. Schaff, 282 Mo. 497; 1 Robt. Fed. Liab. Carr., sec. 494; Brier v. Ry. Co., 183 Iowa, 1212; Collins v. Mich. Cent. R. Co., 193 Mich. 303; Ross v. Sheldon, 176 Iowa, 618, L. R. A. 1915 C, 59; L. & N. Ry. Co. v. Mullins' Admx., 181 Ky. 148; Brewer v. Mo. Pacific, 259 S. W. 827; B. & O. Ry. Co. v. Burtch 44 Sup. Ct. Rep. 165, 43 Sup. Ct. Rep. 360; Alexander v. G. N. Ry. Co., 51 Mont. 565, 38 Sup. Ct. Rep. 239; Illinois Cent. Ry. Co. v. Probus, 187 Ky. 118, L. R. A. 1918 E. 863; Coons v. L. & N. Ry. Co., 185 Ky. 741; Lammars v. C. G. W. R. Co., 187 Iowa, 1277; Holmberg v. Ry. Co., 188 Mich. 605; K. C. So. Ry. Co. v. Martin, 262 Fed. 241; Hines v. Industrial Comm., 129 N. E. 175; So. Pac. Co. v. Indust. Acc. Com. Cal., 251 U. S. 259; Hunt v. C. B. & Q. Ry. Co., 259 S. W. 481; Armbruster v. C. R. I. & P. Ry. Co., 166 Iowa, 155; 1 Rob. Fed. Liab. Carr., sec. 517, p. 900; Erie Ry. Co. v. Collins, 259 Fed. 172, 245 Fed. 811, 253 U. S. 77; Pedersen v. Delaware Ry. Co., 57 L. Ed. 1125, Ann. Cas. 1914 C, 153; L. & N. Ry. Co. v. Parker, 242 U. S. 13; Southern Ry. Co. v. M'Guin, 240 Fed. 649, 244 U. S. 654, 61 L. Ed. 1373; Erie Ry. Co. v. Szary, 253 U. S. 86; Mondou v. Ry. Co., 223 U. S. 51, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; 1 Rob. Fed. Liab. Carr., secs. 448, 488, 490; Industrial Acc. Comm. v. Payne, 259 U. S. 182, 67 L. Ed.

888; L. & N. Ry. Co. v. Netherton, 175 Ky. 159; Slatinka
v. U. S. Ry. Admin., 24 A. L. R. 608; Eley v. C. G. W.
Ry. Co., 186 Iowa, 312; Colasurdo v. Cent. Ry. Co., 180
Fed. 832, 192 Fed. 901; Laughlin v. Mo. Pacific, 297 Mo.
345.

BLAIR, J.—Action by an employee of defend-
ant for personal injuries sustained by him while
assisting in handling a heavy telegraph pole at Altamont,
Missouri. The action was brought under the Federal
Employers' Liability Act. Trial below resulted in a
verdict for plaintiff in the sum of $25,000 and defend-
ant has appealed.

The assignments of error made by defendant are,
first, that the trial court should have given defendant's
instruction in the nature of a demurrer to the evidence,
because the petition is based solely upon the Federal
Employers' Liability Act and the evidence fails to show
facts permitting recovery by plaintiff under said act;
second, because the evidence shows that plaintiff as-
sumed the risk, which resulted in his injury; and, third,
because the court erred in overruling defendant's motion
for new trial on account of the excessiveness of the ver-
dict. We will address ourselves to these propositions
only.

The defendant was operating a line of railroad in
Missouri, Iowa and other states, and was engaged in
both interstate and intrastate commerce. In connection
with a telegraph company and under an arrangement
not here important, defendant operated a telegraph line,
as an appurtenance to its railroad, which it was its duty
to keep in repair. This telegraph line was used in
facilitating and protecting the movement of trains en-
gaged in interstate commerce.

For the purpose of considering whether plaintiff
was engaged in interstate commerce at the time he was
injured, we will assume, without so deciding, that the
evidence supports the allegations of the petition touch-
ing the negligence of defendant. Thus will be eliminated

a recital of facts which do not go to the question to be first determined.

It became necessary for defendant to use two 45-foot telegraph poles in repairing its telegraph line at Trenton, Missouri. Poles of that size were stored at Altamont with poles of different sizes. Plaintiff was employed as a member of the bridge-and-building gang, which was then engaged in work at Altamont. He, with others, was summoned to assist in getting the desired poles out of this pile of telegraph poles, stored on a rack near the railroad track, and to help in placing such poles upon a flat car set at that point for the purpose. It became necessary to move other poles in order to get to the poles desired for use at Trenton. While he was engaged in helping move one of these poles, plaintiff was injured. Details are unnecessary. The two 45-foot poles were finally loaded upon the flat car and taken to Trenton, where they were unloaded and within two or three days thereafter were used by defendant in repairing said telegraph line. The only connection plaintiff had with the repair of the telegraph line was the work he was doing in helping to load the poles at the time he was injured. Does such state of facts permit the maintenance of the suit by plaintiff under the Federal Employers' Liability Act?

Plaintiff was not directly employed in interstate commerce at the time he was injured. The question is whether his act in helping to load the poles upon the flat car, to be thereafter taken by others to another place and there to be handled by other persons in repairing a facility used in interstate commerce, was work so closely related to or connected with interstate commerce as to be practically a part of it? If so, he can maintain his action under the Federal Employers' Liability Act; otherwise, he cannot.

Defendant cites and relies upon Chic., Burlington & Q. Railroad v. Harrington, 241 U. S. 177, 180, 60 L. Ed. 941, 942. There the railroad was insisting that the deceased *was* engaged in interstate commerce and that

plaintiff could not maintain her action brought under the Missouri law *for that reason*. The contention was overruled. Deceased was a member of a switching crew which was moving loaded coal cars from a storage track to a coal shed in the same city, where such coal was to be placed in bins or chutes and supplied as needed to locomotives, some of which were engaged, or about to be engaged, in interstate commerce. The switching movement there, as the train movement here in hauling the telegraph poles to Trenton, was an intrastate movement. The contention there, as here, was that the work deceased was doing was so closely connected with interstate commerce as to be a part of it. This contention was denied by the United States Supreme Court.

We think the work being done by plaintiff in the case before us was not as closely connected with interstate commerce as was that of deceased in the Harrington case. Harrington was a member of the switching crew which was moving the coal. Plaintiff here was not a member of the train crew. He is in the same position a laborer would have been who had helped shovel the coal into the coal car just before Harrington's crew started to move the car, if the car had been loaded in such manner. Plaintiff's membership in the bridge-and-building gang does not affect the situation in any way. He was in the same position as if he had not been previously employed by defendant in any capacity and had been specially employed to assist in loading the telegraph poles upon the flat car. Under the decisions, such employment would have enabled him to maintain the action under the Federal Employers' Liability Act, if his work at the time of his injury was so closely connected with interstate commerce as to be a part of it.

Plaintiff undertakes to distinguish the Harrington case from the case at bar. Counsel urge that there is a distinction between cars and locomotives, on the one hand, and facilities, such as tracks, bridges, telegraph lines, semaphores, etc., on the other. It is true that locomotives and cars may, at one time, be engaged in in-

terstate commerce and, at other times, in intrastate commerce and that the particular use at the time of the injury to the employee, working thereon or therewith, determines whether the action for such injury should be brought under the Federal Employers' Liability Act or the state law. The partial use in interstate commerce of facilities like tracks and telegraph lines gives them the fixed character of interstate facilities. But the Harrington case made no such distinction. The *act* of plaintiff in that case in assisting in the switching movement, not the designated use of the coal, was regarded as *too remote* from interstate commerce to be practically a part of it. The same situation existed in Del., Lack. & West. R. R. v. Yurkonis, 238 U. S. 439, upon the authority of which the Harrington case was ruled.

Counsel urge a further distinction in that the coal was not intended for immediate use, while the telegraph poles were so designated. The use of the coal in the Harrington case might have been as immediate as that of the telegraph poles. Both were designated for a particular use at the time they were being moved and when the injury occurred. The only reasonable distinction we can see is that some of the coal might not be used in interstate commerce, while the telegraph poles were designated for the particular use of repairing a facility, with the permanently fixed character of an interstate facility. As above suggested, the Harrington case was not ruled on any such distinction, but the Federal Employers' Liability Act was held inapplicable because "there was no such close or direct relation to interstate transportation."

The case of Minn. & St. L. Railroad v. Administratrix of Nash, 242 U. S. 619, was ruled upon the authority of the Harrington case and others. It was a memorandum opinion of the United States Supreme Court and we must go to the opinion of the State court for the facts, held not to bring the case within the Federal Employers' Liability Act. [See Nash v. Railroad Co., 154 N. W. (Minn.) 957.] Nash was killed while engaged in an intrastate

309 Mo. Sup.—31.

movement, conveying an out-house, designed to replace another out-building of that sort. When put in place, such building would have served interstate and intra-state commerce alike. At the time the out-house was being conveyed, it was designated for that particular use and apparently would have been immediately so used. The facts in the case are quite similar to the facts in the case at bar, except that Nash was more closely connected with interstate commerce. Apparently the Supreme Court thought that the act of conveying the out-house to the point where it would be used in interstate commerce did not make Nash's act so closely connected with interstate commerce as to be a part of it. Such is the only reasonable theory upon which the Harrington case could well be held to be controlling in the Nash case.

Counsel for plaintiff say that this case is distinguished from the case at bar by the fact that depots, out-buildings, round-houses and facilities of that character are only remotely connected with interstate commerce and that work on such facilities is more remote from such interstate commerce. Some of the cases do make such distinction, but the Nash case was ruled on cases where the act in which the injured was engaged, not the facility, was held to be too remote, such as the Harrington and Yurkonis cases.

The case of Shanks v. Del., Lack. & West. Railroad, 239 U. S. 556, was also given as controlling authority in the Nash case. It was there held that the work Shanks was doing was "to remote from interstate transportation to be practically a part of it." In these cases it was the remoteness of the act of the injured employees which was regarded as determining the applicability of the Federal Employers' Liability Act.

In Del., Lack. & West. Railroad v. Yurkonis, 238 U. S. 439, the work in which plaintiff was engaged was probably not as closely connected with interstate commerce as was plaintiff's work in the present case, but the court there said: "The mere fact that the coal might be or was intended to be used in the conduct of interstate

commerce after the same was mined and transported did not make the injury one received by the plaintiff while he was engaged in interstate commerce.''

Plaintiff places great reliance upon the case of Pedersen v. Del., Lack. & West. Railroad, 229 U. S. 146. That case firmly established the rule that both the railroad and the employee must be engaged in interstate commerce at the time of the injury, and that the employee is so engaged if the work he is doing at the time of his injury is ''so closely related to such commerce as to be in practice and in legal contemplation a part of it.'' Pedersen and another employee were engaged in taking out an existing girder in a bridge, used in interstate commerce, and inserting a new girder therein. Pedersen, under the direction of his foreman, was carrying a sack of bolts from a tool car and was walking over another bridge returning to his work when he was run down by an intrastate-train movement. The bolts were to be used immediately or next day by Pedersen himself in the work which he was doing on the bridge. It was held that he was engaged in work so closely related to interstate commerce as to be a part of it and that the suit was properly brought under the Federal Employers' Liability Act. The facts in Pedersen's case connected him much more closely with interstate commerce than the facts in the instant case connect plaintiff with such commerce. The work plaintiff was doing was too remote to bring him within the facts held sufficient for that purpose in the Pedersen case.

We are not in doubt that the telegraph line, by use in furthering and protecting interstate commerce, became definitely impressed with the character of an interstate facility, and that one engaged in operating or repairing such facility was at least engaged in work so closely related to interstate commerce as to be a part of it. But this does not mean that one engaged in work, which will ultimately enter into the repair of such facility and thereby become a part of it, no matter how remotely, is engaged in work so closely related to inter-

state commerce as to be a part of it. None of the cases cited, unless it be the Coons case, to be noticed later, go as far as we are asked to go in this case. In none of the cases where recoveries under the Federal Employers' Liability Act were sustained, unless it be in the Coons case, was the work in which the injured party was engaged at the time of his injury so far removed from interstate commerce as here.

In Brier v. Chicago, R. I. & P. Railroad Co., 183 Iowa, 1212, the plaintiff was injured while on his way to engage personally in the work of repairing a telegraph line which was a facility of interstate commerce. The case is in harmony with the Pedersen case.

In Erie Railroad Co. v. Collins, 253 U. S. 77, plaintiff was engaged in operating a pump which supplied water to a tank furnishing water used in interstate locomotives. The same situation existed in Roush v. Baltimore & O. Railroad Co., 243 Fed. 712, cited in the Collins case.

In Erie Railroad Co. v. Szary, 253 U. S. 86, plaintiff was employed in drying sand which was being supplied to engines actually engaged in interstate commerce. His work was therefore closely connected with interstate commerce.

In Coal & Coke Ry. Co. v. Deal, 231 Fed. 604, the plaintiff was injured while engaged in the actual work of assisting in repairs being made upon a telegraph line, which was an interstate facility. The propriety of the holding that Deal came within the protection of the Federal Employers' Liability Act could not well be questioned.

In Collins v. Michigan Central R. Co., 193 Mich. 303, plaintiff was injured by an electric shock while actually engaged in working upon a telegraph line, which was an interstate facility. The same situation existed in Ross v. Sheldon, 176 Iowa, 618.

In L. & N. Railroad Co. v. Mullins' Admr., 181 Ky. 148, the deceased was killed while returning home from his day's work as an electric-signal maintainer. He was

using the railroad company tricycle which collided with the train. The tricycle was furnished to him as a means of getting back and forth from his work in connection with a facility of interstate commerce.

In Yarde v. Hines, 209 Mo. App. 547, deceased was killed in a collision between a hand car, upon which he and other employees were riding, and a locomotive. He was on his way to breakfast, furnished by the railroad as part of his compensation. His work was repairing telegraph lines. A somewhat similar situation, as to occurrence of the injury while away from work procuring lodging and meals, existed in Williams v. Schaff, 282 Mo. 497, but in that case Division One held that deceased's work was not in connection with an existing facility of interstate commerce, for the reason that it had not yet been put in use.

In Brewer v. Mo. Pac. Ry. Co., 259 S. W. (Mo. App.) 825, the plaintiff was injured while riding a railroad motor car in going to his work of painting block signals used in interstate commerce.

In Hines v. Industrial Commission, 129 N. E. (Ill.) 175, the deceased was killed while engaged in hauling stringers for the repair of the railroad bridge used in interstate commerce. His work was thus closely connected with such commerce.

In So. Pac. Co. v. Industrial Accident Comm. of California, 251 U. S. 259, the deceased was killed while wiping insulators supporting a main electric-power wire, which furnished power for the operation of interstate trains.

In the case of Lammars v. Chicago-G. W. Railroad Co., 187 Iowa, 1277, the principal question was one of amendment of the petition. It alleged that plaintiff was assisting in unloading rails for use in repairing track used in interstate traffic. This was held to be an allegation bringing plaintiff under the protection of the Federal Employers' Liability Act. Such allegation fixed the connection of the plaintiff to interstate commerce much more closely than that of the plaintiff in the case at bar.

In Holmberg v. Lake Shore Ry., 188 Mich. 605, the plaintiff engineer was hurt in a collision. His train was hauling gravel to repair an interstate track. His connection with interstate commerce was close.

In Kansas City Southern Ry. Co. v. Martin, 262 Fed. 241, plaintiff was a member of a bridge gang employed in making repairs for which the timbers and crossties, which he was handling at the time he was injured, were being unloaded. His work was very closely connected with interstate commerce.

In our opinion the only case cited by respondents where the connection of the injured employee with interstate commerce may be regarded as being as remote as that of the plaintiff in the case at bar, is Coons v. L. & N. Railroad Co., 185 Ky. 741. There the plaintiff was a section hand. Some rails which came from the Lexington Branch near Midway, Kentucky, were piled on crossties near the track. Presumably, they were thus piled near Midway, although the opinion does not clearly say so. Plaintiff was assisting in loading these rails upon a flat car when he was injured. The rails were to be shipped to Hazard, Kentucky, a point some distance from Midway, and were there to be used in a track devoted to interstate and intrastate commerce. Because of the distance between the two points, although the opinion does not so state, we assume that the only connection plaintiff had with the repairs of the track at Hazard was to assist in loading the rails. The facts in the Coons case, as stated and as thus assumed by us, are quite parallel to those in the case at bar. The Court of Appeals of Kentucky held that Coons was engaged in work so closely connected with interstate commerce as to be a part of it. We find no other cases where work so far removed from interstate commerce has been held to be part of interstate commerce. In view of what we think to be the great weight of authority otherwise, we are unwilling to follow that case.

The work in which plaintiff in the case at bar was engaged when injured was removed from the actual

work of repairing an interstate facility by at least three separate and distinct operations. After being loaded upon the flat car, the telegraph poles had to be hauled to Trenton. A second operation took place when they were unloaded there. A third operation took place when the poles were moved to the point where they were to be used. And, if the persons who removed the poles from the unloading place at Trenton were not employees engaged in the actual repairs, the work of still other employees was involved. At least three such operations must have occurred before the actual work of placing the poles in the telegraph line could begin.

The line must be drawn somewhere. If plaintiff was engaged in interstate commerce when he was injured, then the railroad employee who felled the tree which was made into the telegraph pole would be likewise engaged, if that particular tree had been set apart for such purpose. Likewise, the railroad employee who sharpened the axe, used by the employee who felled such tree, would come within the Federal Employers' Liability Act, and we would have a connection with interstate commerce about as close as that which "the priest all shaven and shorn" bore to the famous "house that Jack built."

It is not here necessary, and we will not undertake, to say where the line should be drawn; but we are convinced, from the trend of the decisions discussed, that such line must be drawn at some operation in the repair of a facility of interstate commerce nearer to and more closely connected with it than a task three or four times removed from actual work upon such facility.

We hold that the work which plaintiff was doing in helping to load the telegraph poles upon the flat car, which necessitated thereafter a train movement to Trenton and unloading thereat and removal therefrom before the poles could be used in the repair of the telegraph line, was too remote and cannot be said to have been so closely related to interstate commerce as to be practically a part of it.

It therefore becomes unnecessary to notice the other contentions of defendant that plaintiff assumed the risk and that the verdict is excessive.

It results that the judgment should be reversed without prejudice to any right the respondent may have to bring suit hereafter under the laws of the State of Missouri. It is so ordered.

All concur.