JOHN OWENS, RESPONDENT, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, APPELLANT.—46 S. W. (2d) 930.

Springfield Court of Appeals. February 4, 1932.

Rehearing denied March 11, 1932.

*E. T. Miller* and *Mann, Mann & Miller* for appellant.

*Sizer & Gardner* for respondent.

COX, P. J.—Action for damages under the Federal Employers' Liability Act for an injury received by plaintiff while working on a water crane through which water was furnished to engines pulling trains on defendant's tracks. Plaintiff recovered $3000. Defendant appealed.

Appellant relies chiefly on two points:

First: That the evidence does not show that plaintiff at the time of the accident in which he was injured was employed in interstate commerce and for that reason he cannot recover in this form of action.

Second: That the evidence fails to show that the plaintiff's injury was caused by defendant's negligence.

We shall consider these in the order named. The facts upon which the question of whether plaintiff was employed in interstate commerce at the time he received the injury are substantially as follows: Defendant operates a railroad that passes through several states and is engaged in both interstate and intrastate commerce. At Lindenwood, at or near St. Louis, defendant maintained a water crane through which water was supplied to engines which hauled trains in both interstate and intrastate commerce. This water crane stood near the track and consisted of an upright pipe with what is called a goose neck at the top to which was attached a pipe which extended laterally a sufficient distance to reach an engine on the track and through which water was supplied to the engine. The upright part of the crane was in sections with flanges or protrusions at the joints through which bolts passed to fasten the joints together. The

crane rested on a foundation which enclosed the pipes through which the water passed to a connecting pipe in the crane and thus up to the lateral or goose neck part of the crane through which it passed to a pipe that conveyed it to the engine on the track. The upright portion of the crane was about fourteen feet high. At a point not far above the ground was a joint, in the flanges of which was a slot in which an iron plug was inserted to prevent the crane from turning and hold it stationary. When it was desired to pass water to an engine this iron plug was lifted out of the slot and the crane turned and placed in such a position as to allow the outer end of the lateral pipe to connect with the engine and permit water to be passed through it to the engine. When not in use for that purpose the crane was turned so the lateral part of it at the top was parallel with the track and the iron plug then inserted in the slot to hold it in that position. This crane had, in some way, been broken off a short distance above the ground and was taken to the shop and its parts repaired so that it could be replaced and again be used as before to supply water to engines on the track. This repair work in the shop required some six days. When the parts were returned to the place where the crane stood before being broken, this plaintiff and others working under a foreman, were proceeding to replace the parts of the water crane which had been repaired. They had the work almost completed. The upright pipe and goose neck and the lateral pipe had been placed together and in position when plaintiff placed a ladder against the lateral pipe and climbed up the ladder to place a bolt in position at the top when the crane turned and the ladder fell with him and he was injured.

Do these facts show that plaintiff was working in interstate commerce when he was injured?

The Federal statute provides that "Every common carrier, by railroad, while engaged in commerce between any of the several states . . . shall be liable in damages to any person suffering an injury while he is employed by such carrier in such commerce."

In construing this statute, the courts all agree that to recover under it, the employee at the time of his injury "must be engaged in interstate *transportation* or some work so closely related to it as to be practically a part of it," but just what facts will meet this test is not always easy to determine. Each case must rest on its own facts. [Cudahy Packing Co. v. Paramore, 263 U. S. 418, 68 L. Ed. 366.]

We briefly note a few of the many cases cited by appellant in which recovery was denied because the injured party was not, at the time of his injury, actually engaged in "interstate transportation or some work so closely related to it as to be practically a part of it."

A party engaged in building something new, which, when completed, will be used in interstate commerce. [Williams v. Schoff, 282

Mo. 497, 222 S. W. 412; Raymond v. Chicago, M. & St. P. R. Co., 243 U. S. 43, 61 L. Ed. 585; N. Y. C. R. Co. v. White, 243 U. S. 188, 61 L. Ed. 667.]

A party mining coal in a mine belonging to a railroad which coal was to be hauled by freight trains to a place where it could be used by the railroad in supplying engines engaged in interstate commerce. [Delaware & W. R. R. v. Yurkonis, 238 U. S. 439, 59 L. Ed. 1397.]

A switchman removing a car of coal from a storage track to a car chute to be there unloaded and then used in engines engaged in both interstate or intrastate commerce as occasion should demand. Chicago B. & Q. R. R. Co. v. Harrington, 241 U. S. 177, 60 L. Ed. 941; Lehigh Valley R. R. Co. v. Barlow, 244 U. S. 183, 61 L. Ed. 1070.]

A party repairing a car in a shop which car might next be used in interstate or intrastate commerce as occasion should demand. [Minn. St. Louis R. Co. v. Winters, 242 U. S. 353, 61 L. Ed. 358.]

A party working in a machine shop helping to move and relocate a shaft through which power was communicated to a machine used in repair work. [Shanks v. R. R., 239 U. S. 556, 60 L. Ed. 436.]

A party selecting telegraph poles from a pile, loading them on a flat car to be hauled several miles to another station and there to be unloaded by other parties and used to repair a telegraph line. [Fenstermacher v. R. I. R. R., 309 Mo. 475, 274 S. W. 718; Fenstermacher v. R. I. R. R., 70 L. Ed. 420.]

In Kelley v. R. R., 238 Fed. 95, the Federal Circuit Court of Appeals of the Third Circuit held the deceased was not engaged in interstate transportation at the time he was killed. The deceased in that case was walking on the railroad track toward a coal chute for the purpose of repairing it but had not reached it nor had he done any work upon it. A petition for writ of *certiorari* to the Supreme Court was filed and the writ denied but no opinion filed. [See 61 L. Ed. 945.] Had the deceased reached the coal chute and had been actually engaged in repairing it at the time of his injury the result might have been different. The distinction between that case and this is that in this case the employee was actually at work repairing the water crane through which water passed directly to the engine when injured while in the Kelley case he was not at work on the coal chute through which coal was passed to the engine but was merely approaching it with the intent to begin work upon it.

In Gallagher v. N. Y. C. R. R. Co., 167 N. Y. Sup. 480, affirmed in 119 N. E. 1044, *certiorari* denied, 63 L. Ed. 421, by the United States Supreme Court but no opinion filed. Deceased was swinging a sledge hammer to cut the head of a bolt in a trestle over which cars were run to the coal pockets when he lost his balance and fell about sixteen feet to the ground. The facts are stated in 119 N. E. 1044. The trestle was not used in interstate commerce but was a stationary

track over which cars of coal were hauled up and unloaded in the coal pockets to be kept there until taken therefrom for the use of engines on the track which were engaged in both interstate and intrastate traffic. How the coal was passed from these pockets to the engines is not stated. We think that, presumably, it was passed from these pockets through chutes that when in use were directly connected with the engine to be supplied with coal. The chute would have contact with the engine but the coal pocket would not; neither would the trestle over which coal was hauled up to be unloaded into the pockets have any contact with the engine on the track.

In neither the Gallagher nor the Kelly case was the party working upon an appliance that had direct connection with engines on the track and that fact distinguishes both those cases from the case at bar.

In Erie R. R. Co. v. Szary, 253 U. S. 86, a party charged with the duty to supply engines with sand used a stove to dry the sand. When injured he was carrying cinders from this stove to a pit across the track. The Supreme Court held that he was engaged at the time in interstate commerce. In Erie R. R. Co. v. Collins, 253 U. S. 77, 64 L. Ed. 790, the injured party was pumping water into a water tank from which it was passed to engines as needed. The Supreme Court held he was engaged in interstate commerce. Both these cases were overruled by the Supreme Court on January 4, 1932, in the case of Chicago and Eastern Ill. R. R. Co. v. Industrial Commission of Illinois and Joe Thomas. At this writing that case has not yet appeared in the Advance Sheets of the Federal Reporter. In this last case Thomas was attempting to oil an electric motor while it was running and was injured by having his hand caught in the gears. The electric motor furnished power for hoisting coal into a chute to be taken therefrom for the use of locomotive engines principally employed in the movement of interstate freight. The contention was made that upon the authority of the Szary and Collins cases it should be held that Thomas was, at the time, engaged in interstate commerce. The Supreme Court took the position that if the Szary and Collins cases were right, the contention of Thomas should be upheld. It then overruled both the Szary and Collins cases, and held that Thomas was not engaged in interstate commerce. Thomas was operating an electric motor that hauled coal up into what was spoken of as a chute from which it was passed in some way to the engines. The motor which he operated had no direct contact in any way with any engine that secured coal from the chute. His work ended in placing coal in the chute and some one else, in some way not stated, must pass the coal from the chute to the engines That lack of direct contact with the engine to be furnished the coal distinguishes that case as well as the Szary and Collins cases from the case at bar.

Our attention has been called by appellant to another very recent case, to-wit, Chicago & N. W. Ry. Co. v. Eugene Bolle, found in Advance Sheets of the Supreme Court for 1931-32, page 90, in which the facts are stated as follows: "Respondent was employed by petitioner to fire a stationary engine which was utilized to generate steam for the purpose of heating a passenger depot, baggage room and other structures and rooms used for general railroad purposes at Waukegan, Ill. The steam was also used to heat suburban passenger coaches standing in the yards. Some of these coaches taken off of interstate trains moving out of Chicago were heated when necessary before being taken by other interstate trains to be carried back. A way car and bunk cars converted into stationary structures and kept by some of the employees engaged in the track maintenance and bridge and building departments were likewise heated and sometimes steam was used to prevent freezing of a turn table used for turning engines employed in both interstate and intrastate traffic.

On the occasion in question the stationary engine was temporarily out of order and in accordance with the usual practice respondent had been making use of a locomotive engine as a substitute. While thus employed he was directed to accompany this locomotive engine to a place about four miles distant to obtain a supply of coal. For that purpose the engine was attached to and moved with three other locomotive engines then being prepared for use in interstate transportation. While coal was being taken upon one of the locomotives respondent was seriously injured through what is alleged to have been the negligence of petitioner.

The sole object of the movement of the substitute engine was to procure a supply of coal for the purpose of generating steam. This movement was in no way related to the contemplated employment in interstate transportation and its use differed in no way from the use of the stationary engine when that was available.

In commenting upon the statute and the Shanks case, 239 U. S. 556, the court said "The Employers' Liability Act provides that 'Every common carrier by railroad while engaging in commerce between any of the several states . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce if the injury be due to the negligence of the carrier, etc.' This court at page 558, after quoting the words of the act laid down the following test for determining whether the employee in any given case comes within them, 'Having in mind the natural and usual course of the business to which the act relates and the evident purpose of Congress in adopting the act we think it speaks of interstate commerce not in a technical legal sense but in a practical one better suited to the occasion. [See Swift & Co. v. U. S., 196 U. S. 375, 398, 49 L. Ed. 518, 525, 25 Sup. Ct. 276.|

And that the true test of employment in such commerce in the sense intended is, was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it.' '' The court then said ''It will be observed that the word used in defining the test is 'transportation,' not the word 'commerce.' The two words were not regarded as interchangeable but as having different meanings. Commerce covers the whole field of which transportation is only a part and the word of narrower significance was chosen understandingly and deliberately as the appropriate term. The business of a railroad is not to carry on commerce generally. It is engaged in the transportation of persons and things in commerce and hence the test of whether an employee at the time of his injury is engaged in interstate commerce within the meaning of the act naturally must be whether he was engaged in interstate transportation or in work so closely related to such transportation as to be practically a part of it. . . . The appropriate test thus firmly established is not to be shaken by the one or two decisions of this court, where, inadvertently, the word 'commerce' has been employed instead of the word 'transportation.' '' From all this it appears that Congress in enacting the statute must have ''inadvertently'' used the word ''commerce'' in the statute when they really meant to use the word ''transportation.'' Be that as it may, the rule is now firmly established that for an employee to bring himself within the provisions of the statute, he must show that at the time of the injury he was at work in interstate transportation or some work so closely related thereto as to be practically a part of it. That is the rule the courts are to follow but there is no fixed standard by which the court can determine when a party has brought himself within the rule. Each case must depend upon its own facts and the litigant must depend upon the judgment of the court whose duty it is in each case to apply the test to the facts developed. This is demonstrated by the fact that the Supreme Court of the United States, as stated above, just recently overruled two of its own cases which had for a number of years been regarded as expressing sound legal conclusions.

There is one case which seems to us to be in principle the same as the case at bar. It is Pederson v. R. R., 229 U. S. 146, 57 L. Ed. 1125. In that case a party was helping to repair a bridge by removing a defective girder and placing a new one in its place. At the time of his injury he was carrying a sack of bolts to the bridge to be used in fastening the girder in place. It was there held that he was engaged in interstate transportation at the time of his injury. The bridge did not transport anything. It was stationary. Its function was to hold up the track while trains passed over it. Trains could not pass that point if the track were not supported

by the bridge and hence passengers and freight could not be transported beyond that point without the bridge. The bridge was so closely related to transportation as to be practically a part of it. Trains could not run without a track, neither could the engines pull the trains unless they were supplied with heat and water. The power used by the engine was steam and it must be supplied with water in order to create steam and if water were not supplied, it would be helpless and could not move an inch even though the track was in perfect condition.

It has been held that a party at work repairing a telegraph line used in directing the movement of trains on an interstate railroad is within the Federal Act. [Deal v. Coal Co., 215 Fed. 286.]

While no standard by which to determine when an employee is working at or upon something that is directly connected with interstate transportation or so closely related thereto as to be practically a part of it has been fixed by the courts, nor shall we undertake to fix such a standard, it seems clear to us that unless we shall limit the employee to work upon the track or engines and cars used in the transportation or telegraph lines used to direct the movements of trains engaged in interstate transportation, that it must be held in this case that this respondent, while repairing the water crane which, when water was passing through it to the engines, was so closely connected with the engines as to permit direct passage of water through it to the engines, he was engaged in labor upon an appliance so closely related to interstate transportation as to be practically a part of it.

Our conclusion in this case is that at the time of his injury, the respondent was within the rule.

The other question is whether the evidence will support a finding that plaintiff's injuries resulted from defendant's negligence. Plaintiff's testimony shows that the water crane was held in place so that it could not turn by an iron plug being dropped into a slot at a loose joint.

The lower section was stationary and when the plug was out of the slot the section of the crane above this joint would rotate. When this crane was broken, the slot into which the iron plug dropped was broken and in repairing the crane this slot was repaired by being oxwelded, which is a process by which the metal is melted and run together. In doing this, particles of metal adhered to the sides of the slot which made it necessary to file off these particles before the plug would fall into the slot. This plug was also slightly oval at the bottom. According to plaintiff's testimony, the foreman filed on this slot to remove the particles of metal and also placed or attempted to place the plug in the slot to hold the crane stationary until the work could be completed. He then said to the workmen,

"All right. Let's go. Let's put it up." Plaintiff had placed the ladder against the extended arm of the crane and had ascended almost to the top of the ladder to ascertain the kind of bolt needed to be placed in position and then descended to the ground to secure the bolt that he needed. During this time the crane did not move but when he again ascended the ladder and attempted to place the bolt in position, the crane turned and the ladder slipped off and plaintiff fell to the ground, alighting on the railroad track and was hurt. It was also shown that when the iron plug was inserted the full length in the slot that it would hold firmly and prevent the crane from turning. We think this evidence sufficient to take to the jury the question whether the foreman negligently failed to insert the plug in the slot a sufficient distance to prevent it slipping out when sufficient pressure was brought against the lateral arm at the top of the crane and that plaintiff's fall and injury resulted from the plug slipping out when plaintiff's weight, when he ascended the ladder the second time, brought enough pressure on the plug to cause it to slip out and let the crane turn.

The judgment will be affirmed. *Bailey* and *Smith, JJ.*, concur.