S. A. Garrison v. Guy A. Thompson and L. W. Baldwin, Trustees of the Missouri Pacific Railroad Company, Appellants.—127 S. W. (2d) 649.

Division One, May 2, 1939.*

*Thomas J. Cole, L. J. Bishop* and *D. C. Chastain* for appellants.

---

*NOTE: Opinion filed at September Term, 1938, April 1, 1939; motion for rehearing filed; motion overruled at May Term, 1939, May 2, 1939.
(579)

*Clarence C. Chilcott, Earl H. Bowles* and *Will H. Hargus* for respondent.

BRADLEY, C.—This is an action for damages under the Federal Employers' Liability Act, 45 U. S. C. A., Sections 51 et seq. Plaintiff, upon a jury trial, obtained a judgment for $10,000, and defendants appealed.

Error is assigned on the refusal of defendants' demurrer to the evidence at the close of the whole case, on given instructions given for plaintiff, and on an alleged excessive verdict.

July 1, 1935, defendants entered into a contract with Crane & Byrd, whereby 42130 water pocket ties were to be driven into the roadbed at designated places between Archie in Cass County and Jasper in Jasper County. These ties were to be driven into the roadbed at the ends of the track ties and at places along the way called "water pockets." The purpose was to reinforce and strengthen the roadbed where menaced by water. Defendants were to furnish and to distribute the ties to the designated places. The ties were shipped from Louisiana and Arkansas. At a point near Boston, in Barton County, a surplus of 1427 ties were distributed. There was a shortage of these ties near Butler, in Bates County, and defendants moved the 1427 from near Boston to the vicinity of Butler, and they were there distributed and driven into the roadbed. Plaintiff was injured in the *second* of the several *movements* of these ties in getting them from the right of way near Boston to the places where used, and into the roadbed.

The 1427 ties made four carloads, and the cars, into which they were loaded, were set at Boston on September 13, 1935. The ties were picked up from the right of way by three section crews and transported to Boston by means of motorcars and what is called push cars. The ties were loaded crosswise on the push cars and about thirty ties made a load. The motorcars pulled the push cars. September 14, 1935, plaintiff, a member of a section crew, was engaged with others, in picking up these ties from the right of way and transporting them to Boston, to be there loaded for shipment to the places where they would be used. The crew, with which plaintiff was working, was going north into Boston with a load of ties on a push car which was pulled by a motorcar. All members and the foreman were riding on the motorcar. Plaintiff sat in front on the right side seat. Other members of the crew sat on the same seat and to his rear. The foreman sat in front on the left side seat, and had control of the car. They were traveling about twenty-five miles per hour and slightly downgrade when a tie fell from the push car, which caused the front wheels of both cars to jump the track. Plaintiff was thrown forward and in front of the motorcar, resulting in the injuries complained of.

Two carloads of the 1427 ties were loaded at Boston on September 14, 1935, day plaintiff was injured, and were moved by train to Nevada on September 16th. The other two carloads were loaded at Boston on September 18th, and were moved to Nevada on September 19th. On

same day, the 19th, the four cars were moved to Butler and placed on a siding, and there remained until September 21st. On the last mentioned date, the four cars were picked up by a work train and were distributed to the places where they were to be used. September 24th, Crane & Byrd, the contractors, began driving these ties into the road-bed, and by September 29th, had so used all these ties.

Under the pleadings and the evidence, defendants' demurrer raised two questions, viz.: Was plaintiff, at the time of injury, engaged in interstate transportation or in work so closely related thereto as to be practically a part of it? And, did plaintiff assume the risk? It is conceded that defendants' railroad operated both intra and interstate, and that the work of driving the water pocket ties into the road-bed was work so closely related to interstate transportation as to be practically a part of such work.

It is pointed out in Shanks v. Delaware, L. & W. Railroad Co., 239 U. S. 556, 36 Sup. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797, that "the true test of employment in such commerce in the sense intended (by the statute) is, Was the employee, at the time of the injury, engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?" [See, also, Chicago & N. W. Railroad Co. v. Bolle, 284 U. S. 74, 52 Sup. Ct. 59, 61, 76 L. Ed. 173; Chicago, B. & Q. Railroad Co. v. Harrington, 241 U. S. 177, 36 Sup. Ct. 517, 60 L. Ed. 941; and Chicago & E. I. Railroad Co. v. Industrial Comm. of Ill., 284 U. S. 296, 52 Sup. Ct. 151, 76 L. Ed. 304, 77 A. L. R. 1367.]

In Fenstermacher v. Chicago, R. I. & P. Ry. Co., 309 Mo. 475, 274 S. W. 718, the facts were these: It became necessary for the defendant to use two 45-foot telegraph poles in repairing its telegraph line at Trenton, Mo. Poles of that size, with other poles, were stored at Altamont. Plaintiff was a member of the bridge and building gang which was then engaged in work at Altamont. He, with others, was directed to assist in getting the two desired poles out of the pile of poles at Altamont, and to assist in loading the two poles on a flat car. It was necessary to move some poles in order to get to the two desired poles. While assisting in moving a pole, plaintiff was injured. The two 45-foot poles were loaded on a flat car and taken to Trenton where they were unloaded. In two or three days these poles were used in repairing the telegraph lines. The only connection that plaintiff had with the repair of the telegraph line was the work he was doing when injured. It was held that plaintiff was not engaged in interstate transportation or in work so closely related thereto as to be practically a part of it. In ruling the question the court said (309 Mo. 475, 274 S. W. l. c. 720):

"We are not in doubt that the telegraph line, by use in furthering and protecting interstate commerce, became definitely impressed with the character of an interstate facility, and that one engaged in oper-

ating or repairing such facility was at least engaged in work so closely related to interstate commerce as to be a part of it. But this does not mean that one engaged in work, which will ultimately enter into the repair of such facility and thereby become a part of it, no matter how remotely, is engaged in work so closely related to interstate commerce as to be a part of it."

Quite a number of cases are reviewed in the Fenstermacher case, and among these is Coons v. L. & N. Railroad Co., 185 Ky. 741, 215 S. W. 946. The plaintiff in that case was a section hand. The Fenstermacher case gives the facts of the Coons case thus (309 Mo. 475, 274 S. W. l. c. 721): "Some rails which came from the Lexington branch near Midway, Ky., were piled on cross-ties near the track. Presumably they were thus piled near Midway, although the opinion does not clearly say so. Plaintiff was assisting in loading these rails upon a flat car when he was injured. The rails were to be shipped to Hazard, Ky., a point some distance from Midway, and were there to be used in a track devoted to interstate and intrastate commerce. Because of the distance between the two points, although the opinion does not so state, we assume that the only connection plaintiff had with the repairs of the track at Hazard was to assist in loading the rails."

It was held by the Court of Appeals of Kentucky that Coons, at the time of his injury, was engaged in work so closely connected with interstate transportation as to be practically a part of it. But this court (in the Fenstermacher case) declined to follow the Kentucky Court of Appeals, saying (309 Mo. 475, 274 S. W. l. c. 721): "The facts in the Coons case . . . are quite parallel to those in the case at bar. The Court of Appeals of Kentucky held that Coons was engaged in work so closely connected with interstate commerce as to be a part of it. We find no other cases where work so far removed from interstate commerce has been held to be part of interstate commerce. In view of what we think to be the great weight of authority otherwise, we are unwilling to follow that case."

In the Fenstermacher case it is pointed out that the plaintiff, when injured, was removed from the actual work of repairing the telegraph line by at least three separate and distinct operations. These operations are stated as follows: "After being loaded upon the flat car, the telegraph poles had to be hauled to Trenton. A second operation took place when they were unloaded there. A third operation took place when the poles were moved to the point where they were to be used. And, if the persons who removed the poles from the unloading place at Trenton were not employees engaged in the actual repairs, the work of still other employees was involved. At least three such operations must have occurred before the actual work of placing the poles in the telegraph line could begin."

Then the court said (309 Mo. 475, 274 S. W. l. c. 721): "It is not

necessary, and we will not undertake, to say where the line should be drawn; but we are convinced, from the trend of the decisions discussed, that such line must be drawn at some operation in the repair of a facility of interstate commerce nearer to and more closely connected with it than a task three or four times removed from actual work upon such facility.''

The application of the reasoning in the Fenstermacher case to the facts in the present case is obvious, and a ruling for plaintiff, in the present case, would clearly run counter to that case. We think that the reasoning and conclusion in that case are sound.

In Clevinger v. St. Louis-San Francisco Ry. Co., 341 Mo. 797, 109 S. W. (2d) 369, the employee was a section hand, and engaged ''in cutting weeds and clearing off the shoulder of the right of way and moving ties . . . taking them back along the track.'' The ties ''had been unloaded off the car and rolled off in the water ditch and the order was to keep them carried out, and we were carrying them out of the ditch and up on the shoulder and rotating them along the shoulder.'' ''Rotating'' meant placing the ties end to end and parallel with the track. The plaintiff in the Clevinger case was asked as to the purpose in moving the ties, and without objection answered: ''Well, that creek overflows and comes down on this side of the track and washes these ties and they drift up against the culvert and the drain that goes under the railroad and causes the track to wash out, and the removal of the ties in that manner was necessary for the physical maintenance of these interstate tracks, . . . that there existed strict orders for section men to keep the ties carried out of the ditch and up on the shoulder.''

These ties were creosoted, and Clevinger got creosote in his eye while helping to handle one of these ties. It was held that the work he was doing was not so closely related to interstate transportation as to be practically a part of it.

The plaintiff in the Clevinger case, as in the present case, relied upon Pedersen v. Delaware, L. & W. Railroad Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153. We have reviewed the Pedersen case many times, and do not deem it necessary to again review it here.

In Clevinger case the court referred to Sailor v. Mo. Pac. Ry. Co., 322 Mo. 396, 18 S. W. (2d) 82, and said: ''The Sailor case involved an injury to a section man sustained in throwing creosoted ties from a car at the usual place on the next day after arrival, to be taken at some future time when needed, by a push car to places along the section, and used in replacing and renewing defective ties. This court held that the employee's act was not, in point of time, place and intent, so directly connected with interstate commerce as to constitute an integral part of interstate transportation. That case distinguishes the Pedersen case and for supporting authority rests upon the Har-

rington case, supra; Fenstermacher v. Chicago, R. I. & P. Railroad Co., 309 Mo. 475, 274 S. W. 718; and upon decisions from other jurisdictions of the class of which the Harrington case is the prototype. [See, also, the later case of De Santis v. New York, N. H. & H. Railroad Co. (C. C. A. 2), 74 Fed. (2d) 261.]''

In the present case there were, stated most favorably for plaintiff, nine separate *handlings* or *movements* of the water pocket ties before they were actually driven into the roadbed. These were: (1) Loading from the right of way onto the push cars; (2) transporting on the push cars to Boston; (3) unloading from the push cars at Boston; (4) loading at Boston; (5) transporting to Nevada; (6) transporting from Nevada to Butler; (7) transporting from Butler to place where used; (8) unloaded (distributed) at place to be used; (9) picked up by Crane & Byrd and driven into the roadbed.

We find no case, where the work being done was held to be interstate transportation work, or so closely connected to such work as to be practically a part of it, where the work was in point of time and movement so *remote* as here. It could serve no useful purpose to review cases further. We are quite clear that the work plaintiff was engaged in when injured, was not so closely related to interstate transportation as to be practically a part of such work.

Reaching this conclusion, it is not necessary to rule other assignments. The judgment should be reversed and it is so ordered. *Ferguson* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.